PHILIP A. BROWN, an Infant, by His Father and Next Friend ANNANIAS BROWN *vs*. THE EDISON ELECTRIC ILLUMINATING COMPANY OF BALTIMORE CITY.

*Injury From Electric Wire not Properly Insulated or Located.*

A boy while cleaning the roof over the projecting front window of a shop çame in contact with defendant's electric light wire which there entered the building carrying a high voltage, and was injured. The evidence showed that the insulation of the wire was defective at points less than one foot from the front of the house. *Held*, that these facts created sufficient *prima facie* evidence of negligence on the part of the defendant to be submitted to the jury.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J. FOWLER, BOYD, PEARCE and SCHMUCKER, JJ.

*William Colton* (with whom was *H. Tebbs* on the brief) for the appellant.

The following cases are especially applicable to the question arising on this appeal : *Ennis* v. *Gray*, 87 Hun. 356 ; *Clements* v. *La. Elec. Light Co.*, 44 La. Ann. 692 ;. *Illingsworth* v. *Boston Elec. Light Co.*, 161 Mass. 583 ; *Griffin* v. *United Elec. Light Co* , 164 Mass. 492 ; *Giraudi* v. *Elec. Imp. Co.*, 110 Cal. 120 ; *Walters* v. *Denver Consol. &c. Co.*, 56 Pac. Rep. 960, (almost identical with the case at bar) ; *Overall* v. *Louisville Elec. Co.*, 47 S. W. Rep. 442 ;. *Gremmis* v. *Louisville Elec. Co.*, 49 S. W. Rep. 184 ; *Perham* v. *Portland Etc. Co.*, 53 Pac. Rep. 14 ; *Reagan* v. *Boston Etc. Co.*, 167 Mass. 406 ; *W. U. Tel. Co.*, v. *Nelson*, 82 Md. 293 ; *Winkelman Co.* v. *Colladay*, 88 Md. 78 ; *Suburban Elec. Co.* v. *Nugent*, 58 N. J. L, 658 ; *Dillon* v. *Allegany Co.*, 179 Pa. St. 482 ; *Schum* v. *Pa. R. Co.*, 107 Pa. St. 8 ; *Phillips* v. *Milwaukee Etc. R. Co.*, 77 Wis. 349 ; *Allen* v. *Willard*, 57 Pa. St. 374 ; *Lehigh Valley R. Co.* v. *Hall*, 61 Pa. St. 361.

As was said in the case of *Overall* v. *Louisville Elec. Light Co., supra :* " Electricity is the most powerful and dangerous element known to science ; it cannot be seen, and it is as silent as it is deadly ; and it follows that those who manufacture and use it for private advantage must do so at their peril. The only way to prevent accidents where a deadly current is used is to have perfect protection at those points where people are liable to come in contact with it. And the jury in this case should have been instructed that this was the duty of the defendant. To have told them that it was the duty of the defendant to observe the highest degree of care and skill, usually exercised by prudent persons engaged in the same or similar business to keep its wires so insulated as to be reasonably safe and free

from danger to persons who might come in contact with them, was not sufficient. The law requires that at those points where such contact is likely to take place perfect protection from this unseen and terrible power." To the same effect are following cases: *Mitchell* v. *Charlestown Light and Power Co.*, 45 S. C. 146 ; *Leavenworth* v. *Ratchford*, 48 Pac. Rep. 927 ; *Uggla* v. *West End St. Ry. Co.*, 160 Mass. 351 ; *Ahern* v. *Oregon Telephone & Telegraph Co.*, 35 Pac. Rep. 549 ; *Texarkana Gas & Elec. Light Co.*, v. *Orr*, 27 S. W. Rep. 66 ; *Haynes* v. *Raleigh Gas Co.*, 19 S. E. Rep. 344 ; *Perham* v. *Portland Gen. Elec. Co.*, 53 Pac. Rep. 14 ; *Denver Cons. Elec. Co.* v. *Simpson*, 21 Colo. 371 ; *Elec. Ry. Co. et al.* v. *Shelton*, 89 Tenn. 423 ; *McKay et al.* v. *Southern Bell Tel. Co., et al.*, 111 Ala. 837 ; *City El. St. Ry. Co.* v. *Conery*, 61 Ark. 381 ; *White* v. *Boston & Albany R. R. Co.*, 144 Mass. 404.

The duty of insulating electric light wires running on the outside of a building is owed to every person who for purposes of business is rightfully on the premises. This was determined in the case of *Griffin* v. *United Elec. Light Co.*, *supra*. The defendant neglecting the performance of its duty has been negligent, and one guilty of negligence, under the circumstances of the defendant in this case, should be responsible for all the consequences which a prudent and experienced man fully acquainted with all the circumstances which, in fact, existed, whether they would have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act reasonably probable to follow if they had been suggested to his mind. 1 *Shearman & Redfield on Neg.* 29 ; *Submarine Tel. Co.* v. *Dixon*, 15 C. B., n. s., 759 ; *Haines* v. *Dewey*, 107 Mass. 494 ; *Milwaukee R. R. Co.* v. *Killen*, 94 U. S. 469. One who violates a duty to others or who commits a tortious or negligent act is liable not only for the injuries which are the direct and immediate consequences of his act, but for such consequential injuries as according to common experience are likely to and in fact do result from his act.

*McDonnell* v. *Snelling*, 14 Allen, 290; *Wellington* v. *Bightly Co.*, 104 Mass. 64; *Derry* v. *Flitner*, 118 Mass. 131. It is no defence that a particular injurious consequence is improbable and not to be reasonably expected if it really appear that it naturally followed from the negligence under examination. *Wharton on Negligence*, sec. 77. A man who starts a fire on his own land negligently, is liable for injuries done by its direct communication to his neighbor's land, and whether or not he might reasonably have expected the particular manner and direction in which it was communicated. *Smith* v. *London*, *etc.*, L. R. 6. C. P. 14; *Bevan's Employers' Liability for Negligence of Servants*, 80–1; *Hill* v. *Windsor*, 118 Mass. 251. The stretching of electric wires about the roof in question, by reason of the fact that it is liable to injure persons having occasion lawfully to be there, is a nuisance. *Wood on Nuisance*, sec. 140a; *Elec. Imp. Co.* v. *San Francisco*, 45 Fed. Rep. 593. The stretching of the wires by the defendant in the manner pursued, and the condition of the insulation on the wire was the proximate cause of the plaintiff's injury. *Wharton on Negligence*, sec. 2; *Shearman and Redfield, Neg.*, sec. 30. Proximate cause of injury is ordinarily for the jury and is not a question of science or legal knowledge; it is to be determined as a fact in view of all the circumstances of fact attending it. *Annapolis Ry. Co.* v. *Gant*, 39 Md. 115; *Vaughn* v. *Taff Vall Ry. Co.*, 3 Hurl. and Nor. 98; *Smith* v. *London*, *etc.*, L. R. 5 C. P. 98; *Milwaukee and St. Paul Ry. Co.* v. *Kellog*, 94 U. S. 469; *Heaven* v. *Pender*, L. R. 11 Q. B. D. 503; *B. C. P. R. Co.* v. *Kemp*, 6 Md. 81.

*John P. Poe* and *C. Hopewell Warner*, (with whom was *Edgar Allan Poe* on the brief), for the appellee.

The plaintiff certainly failed to show just how the accident happened. It was his duty to negative all the probabilities of the defendant's defense and to prove that the injury was due entirely to the fault of the defendant. The

deficiency in his proof is not supplied in this case by the doctrine of *res ipsa loquitur,* for the reason that the peculiar position in which the boy is found and the arrangement of the wires do not explain satisfactorily how the accident happened, and the jury are not allowed to conjecture. *Abbott's case,* 75 Md. 158; *Savington's case,* 71 Md., 599; *Millslagle's case,* 73 Md. 75.

Nor does the evidence show that the defendant was guilty of negligence in the construction and location of its wires. The wires did not touch the cornice, but ran only to a glass insulator that projected by means of an iron bracket seven inches at least from the edge of the cornice, and thus rendered it impossible for anyone who might have business upon the roof to come in contact with the wire except as a result of the grossest kind of negligence, or of unavoidable accident, such as losing one's balance and falling headlong into the street below.

SCHMUCKER, J., delivered the opinion of the Court.

The action in this case was brought against the appellee for damages sustained by the equitable appellant from coming in contact with an electric light wire charged with a high-tension current.

The evidence introduced by the plaintiff tended to prove the following state of facts. The equitable appellant, who, at the time of receiving the injury complained of, was a boy eleven years old, was employed by one Burt, the proprietor of a store at No. 314 W. Pratt street, Baltimore, to clean up the store and discharge other minor duties. There was a roof covering the front window to the store about two feet six inches wide, which extended across the entire front of the building just below the second-story window. An open rainspout or gutter ran along the front edge of this roof and discharged its contents by a down-spout attached to the front of the building.

The electric light current was introduced to the store by two primary wires extending from a pole, standing some

seventy-five feet easterly from the building, to glass insu-
lators which were attached by iron brackets about six inches
long to the easternmost end of the small roof of which we
have spoken.   From the insulators the wires passed into a
fuse-box and then into a converter from which the current
was carried by secondary wires into the store.  The pri-
mary wires from the pole to the converter were charged
with a current of one thousand volts, which is highly dan-
gerous, if not fatal, to the life of anyone coming in contact
with the naked wire; but the secondary wires extending
from the converter into the store were only charged with
the comparatively harmless current of fifty volts.   The
primary wire from the pole to the insulator nearest the
house, and not more than six inches from it, was jointed
just beyond the insulator, and at the time of the accident
the point of the jointed wire was left sticking up and
entirely uncovered.   The same wire was exposed naked by
reason of defective insulation at two other places about
two or three inches beyond the insulator.

Ou June 5th, 1897 the equitable appellant by direction
of his employer went upon the roof which covered the store
window for the purpose of cleaning it and the rainspout
attached to it,  He was seen, by a passer-by, on his knees
upon the roof apparently cleaning the gutter, and shortly
afterwards he was found lying insensible upon the roof with
his head in contact with the exposed joint in the primary
electric light wire nearest to the house.   The flesh of his head
was burning at the point of contact with the wire when he was
found and he was otherwise injured by the electric current
which passed into his body from the wire.   No one wit-
nessed the accident but the appellant himself testified that
he was stooping over the edge of the roof at its eastern end
resting on his left hand while endeavoring with his right
hand to remove a ball which had lodged in the down-spout,
when his left hand slipped and he immediately became un-
conscious.

There was also evidence tending to show that the primary

wire, which was constantly charged with the deadly current, was not covered with the most approved and effective insulating material even where it ran in close proximity to the front of the house.

At the conclusion of the plaintiff's testimony the Court, upon application of the defendant, took the case away from the jury on the ground that there was no legally sufficient evidence to entitle the plaintiff to recover.

The appellee was engaged in supplying electric light to streets and houses by means of a current of so high voltage that the business in which it was thus engaged was in the highest degree dangerous to all persons liable to come into contact with the wires which carried the current. These wires were strung on poles erected in the streets of a large city which were likely to be at all times occupied, and at many times crowded with persons lawfully passing through them. The same dangerous current was, in the course of the business, conducted by wires strung from the poles standing along the curbstone, across the sidewalk to the houses to be lighted by it. Outside of any contractual relation between the parties to this suit the very nature of the business thus conducted by the appellee imposed upon it a legal duty toward every person, who in the exercise of a lawful occupation in a place where he had a legal right to be, was liable to come in contact with the wires charged with this invisible but deadly power. This duty has been recognized and enforced by the Court in many cases in this State and elsewhere.

As applied to the management by the appellee of its wires charged with the high-tension current, this legal duty would require it to see that its wires, when strung where persons were liable to come in contact with them, were *properly placed* with reference to the safety of such persons and were *properly insulated. W. U. Tel. Co.* v. *State, use of Nelson,* 82 Md. 311; *Ennis* v. *Gray,* 87 Hun. 356; *Griffin* v. *U. E. Light Co.,* 164 Mass. 492; *Giraudi* v. *N. Y. C. R. R. Co.,* 35 N. Y. 75; *Overall* v. *Louisville Electric L. Co.,* 47 S. W. R.

442; *Perham* v. *Portland Gen. Elec. Co.*, 53 Pac. Rep. 14; *Reagan* v. *Boston Elec. Light Co.*, 167 Mass. 406.

In the present case the wire charged with the deadly current was carried, by the system of construction adopted by the appellee, to within six inches of the front of the house to be lighted, and was then attached to an insulator quite near the bottom of the easternmost second story window and but a few inches from the end of the roof on which the appellant was injured. In view of the number of lawful purposes, such as painting, repairing and cleaning, for which persons might be required to labor upon the roof in question or upon the front of the house or of the adjoining house, the propriety of bringing the high-tension wire so near to the house may well be questioned. The evidence indicated that the converter which reduced the strength of the current and robbed it of its fatal character might have been placed upon the pole and a low-tension and harmless current have been carried from the pole to the house.

If the witnesses are to be believed, the insulation of the high-tension wire at the time of the accident was defective at several places within less than one foot from the front of the house. The evidence is that the exposed point on which the appellant was injured was not over seven inches from the roof on which he was working. In *Nelson's case supra*, where the defective insulation of an electric supply wire permitted an unused telephone wire, which fell across it and reached the pavement, to become so heavily charged with electricity that it killed a child on the street who came in contact with it, we held that it was the plain duty of the company not only to properly erect their plants but to maintain them in such condition as not to endanger the public. We also held in that case that if the property of the defendant was not in proper condition and by reason thereof the plaintiff was injured, those facts alone in the absence of other evidence to show that the defect originated without the fault of the company afford *prima facie* presumption of negligence. The doctrine there announced applies with equal force to the present case.

There were no eye-witnesses to the occurrence of the accident and the appellee strongly contended that the evidence failed to show that either the condition or the arrangement of the wires was the cause of the injury to the appellant, and relied in that connection on *Abbott's case,* 75 Md. 158; *Savington's case,* 71 Md. 599; and *Millslagle's case,* 73 Md. 75. An examination of those cases shows that there is a plain distinction between them and the one now under consideration in this that no one of those cases presented such a *prima facie presumption* of *negligence* against the defendant as the present one does.    In Abbott's case there was no evidence at all of negligence on the part of the defendant.    In each of the other cases the person killed was a trespasser on the track of the railway by whose train he was struck.    In Millslagle's case there was also some evidence indicating that the boy who was killed had attempted to board the cars while they were in motion and the condition of the body when found gave color to that view of the case; and in Savington's case there was evidence tending to show that the boy who was killed stumbled and fell against the pilot of the engine while running between the north and south tracks of the railroad.    In the case at bar the boy was engaged in a lawful occupation at a place where he was entitled to be when he was injured, and there is no evidence showing a want of care on his part.    If his own evidence is to be believed the injury would not have occurred if the wires of the appellee had been properly insulated or if the high-tension current had not been brought so near to the house.

We think the case presented such strong *prima facie* evidence of negligence on the part of the appellee that it should not have been taken from the jury

*Judgment reversed and cause remanded.*

(Decided January 9th, 1900).