# HAGERSTOWN & FREDERICK RAILWAY COMPANY

*vs.*

# THE STATE OF MARYLAND, For the Use of Bruce A. Weaver.

*Electric Wire—Breaking by Fall of Tree—Injury to Person on Highway—Evidence.*

In an action against an electric company on account of a death caused by an electric current communicated to a wire fence as a result of the breaking of a transmission wire, caused by the fall of a limb of a tree, evidence that other limbs of the tree had fallen was admissible, in connection with evidence of the condition of the trunk of the tree where those limbs gave way, to show both that the tree was decayed and that defendant could, by the exercise of reasonable care, have known of its dangerous condition.                                   pp. 510, 511

A company transmitting electricity along a highway is under an obligation so to construct and maintain its poles and wires that no injury will be caused a person lawfully using the highway, as a result of his coming in contact with the wires, or of the transmission of the current to other wires.          p. 512

That defendant's poles were planted on its own right of way did not relieve it of the duty to use a degree of care commensurate with the danger to which those using the highway were exposed by reason of the construction and maintenance of its high-tension wires.                              p. 514

That the tree, the fall of a limb of which caused the breaking of defendant's wire, was upon the private property of another, did not relieve defendant of liability.          p. 514

In an action against an electric company for death caused by the breaking of one of its transmission wires and the consequent charging of a wire fence with electricity, as a result of the fall of the limb of a tree across the highway, *held* that there

was evidence that defendant could, with proper care, have known that the tree was decayed, and that the limb would probably fall and break its wire, and that it did nothing to protect its wires or to protect the public from injury by a fallen wire.                                                    p. 514

*Decided November 30th, 1921.*

Appeal from the Circuit Court for Washington County (WAGAMAN, J.).

Action by the State of Maryland for the use of Bruce A. Weaver against the Hagerstown and Frederick Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, STOCKBRIDGE, and OFFUTT, JJ.

*Alexander Armstrong,* with whom was *Charles D. Wagaman* on the brief, for the appellant.

*Elias B. Hartle,* with whom was *Joseph W. Wolfinger* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

The Hagerstown and Frederick Railway Company in August, 1920, and for several years prior thereto, owned and operated an electric plant at Security, in Washington County, Maryland, and was engaged in the business of generating and furnishing electric light and power. The current was furnished or transmitted through three high tension "transmission wires" strung on poles, which extended from Security to Smithsburg, in Washington County, Maryland, and thence along the side of the state road to Waynesboro, Pennsylvania. At the point of the accident which gave rise to this suit, about two miles from Smithsburg, the poles of the appellant were

located "just inside and adjacent to" a wire fence on the
west side of the highway. This fence ran along the side of
the highway and under the electric wires of the railway com-
pany several rods, and then in a westerly direction for some
distance along the side of a county road which intersected
the state road. On the opposite side of the state road, which
was about thirty feet wide, and standing just inside of the
fence, on that side of the road, was a large weeping willow
tree, from five to six feet in diameter. A large limb of this
tree extended out over the highway, and about 6.30 o'clock
in the afternoon of August 16th, 1920, the limb gave way and
fell across the state road. In falling it struck and broke one
of the transmission wires of the railway company, and one
end of the broken wire came in contact with the wire fence,
which immediately became charged with the electric current.

The crash of the limb was heard by a number of persons in
the neighborhood, who went to the point where it fell to see
what had happened. Among them were Mrs. Mary A.
Weaver and her little son, Vernon Edwin Weaver, about five
years old, who lived on the county road mentioned a short
distance from the state road. The bed of the county road was
covered with broken stone, and between the side drain and
the wire fence referred to was a very narrow path or footway.
The little boy, who was barefooted, in order to avoid the
broken stone, walked on the path, and as he approached the
state road he came in contact with the wire fence, and was
instantly killed. This suit was brought by the father of the
little boy against the railway company on the ground that his
death was caused by the negligence of the company. The
trial of the case in the court below resulted in a verdict and
judgment in favor of the plaintiff, and this appeal is from
that judgment.

During the trial the defendant reserved sixteen exceptions
to the rulings of the court on the evidence, and one to its
action on the prayers. The exceptions to the evidence may
be considered together.

The plaintiff offered evidence tending to show that the tree in question was old and decayed; that where the limb broke from the trunk of the tree it was decayed; that the limb was a very large one, estimated by the various witnesses to be from ten to twenty inches in diameter at the butt, and extended out over the highway in such a position as to indicate that if it fell it would fall upon the wires of the defendant; that the weather was clear, and that the giving away of the limb was not due to a storm but to the decayed condition of the tree; that during the summer of 1920, and previous to the day mentioned, two other limbs of the tree had given away and fallen across the road under similar conditions of the weather, and that where they broke from the trunk of the tree the tree was doted or decayed, and that the decayed appearance and condition of the tree could be observed by persons "passing along the highway."

The particular part of the evidence referred to in the first sixteen exceptions is that relating to the falling of other limbs from the tree. That evidence, in connection with the other evidence we have mentioned, was not only admissible for the purpose of showing that the tree was decayed, but also for the purpose of showing that the defendant could, by the exercise of reasonable care, have known of its dangerous condition. The case of *Charles* v. *Baltimore,* 138 Md. 523, cited by the appellant, does not sustain these exceptions. There the suit was brought to recover the cost of repairing an automobile which was damaged by being driven against a part of a bridge on one of the streets of the city. The bridge was generally lighted by six arc lights, but just at the time of the accident, owing to the "short circuiting" of the electric current which supplied these lights, the lights were out. The evidence showed that the short circuit was caused by the extreme condition of the weather that evening, and that within forty minutes after notice to the city that the lights were out the proper officer was on the ground to repair the lights. The Court held that the plaintiff had failed to show any neg-

ligence on the part of the city, and that the fact that other
accidents had previously occurred at the same bridge was not
admissible as reflecting upon the question of negligence of the
city at the time of the accident involved in that suit.   Here
the evidence of the falling of other limbs was offered in con-
nection with evidence of the condition of the trunk of the
tree where those limbs gave way, for the purpose of showing
that the tree was decayed.

The granted prayers of the plaintiff proceeded upon the
theory that if the defendant knew, or by the exercise of rea-
sonable care could have known, of the dangerous condition
of the tree in time to have prevented the accident, then it
was negligent in failing to have the limb removed or to pro-
tect its wires, while the instructions sought by the defendant
asserted, and the contentions of the appellant are: (1) that
there was no evidence of negligence on its part, and (2) that,
as its poles were planted on its own right of way, and the
tree in question was on private property, it had no right to
remove the limb, and that no negligence can be imputed to it
because of its failure to do so or to adopt any other means of
protecting its wires.

It is said in 20 *C. J.*, 347: "Electric companies are liable
for injuries by electric current resulting from their negli-
gence to a person on a public thoroughfare.   Persons or com-
panies operating systems for the transmission of electricity
over public highways owe to the public the duty of properly
constructing and maintaining their poles and wires and of
exercising for the protection of all persons legally using the
highways the high degree of care commensurate with the dan-
ger," and in 9 *R. C. L.*, p. 1200, speaking of the care to be
exercised, it is said: "The degree of care which will satisfy
this requirement varies, of course, with the danger which
will be incurred by negligence, and must be commensurate
with the danger involved, and, according to numerous deci-
sions, where the wires maintained by a company are designed
to carry a strong and powerful current of electricity, so that

persons coming in contact with them are certain to be seri-
ously injured, if not killed, the law imposes upon the com-
pany the duty of exercising the utmost care and prudence
consistent with the practical operation of its plant, to pre-
vent such injury. This is especially true of high tension
wires suspended over the streets of populous cities or towns;
for here the danger is great, and the care exercised must be
commensurate with it." Again, on page 1215 of the same
volume, it is said: "The duty of electric companies is not
limited to keeping their own wires, in the streets and high-
ways, in a safe condition, but extends to the exercise of due
care and diligence for the prevention of the escape of the
dangerous force in their service through any wires brought in
contact with their own, and of its transmission thereby to any
one using the streets. Only in this way can the public receive
that protection due it while exercising its rights in the high-
ways in or over which electric wires are suspended, and it is
accordingly often held that electric companies maintaining
wires carrying heavy charges of electricity are under obliga-
tion to maintain some kind of safeguard to prevent their con-
tact with other wires." The same rule has been applied and
the same degree of care required by the decisions in this
State. In *West. Un. Tel. Co.* v. *State,* Use of Nelson, 82
Md. 293, a child about eleven years of age was killed while
on one of the streets of Baltimore City by coming in contact
with a broken telephone wire attached to a pole of the tele-
graph company, the end of which passed over or around the
feed wire of the City and Suburban Railway Company and
extended to the pavement below. The broken telephone wire
did not belong to the telegraph company or to the railway
company, but it had been allowed to remain in that position
about two weeks. In the course of the opinion this Court,
speaking through JUDGE PAGE, said: "Both of the defendants
were using the streets under the permission of the State and
municipal authorities, for purposes of private gain by means
of agencies such as could and would become dangerous to

human life if not properly and carefully employed. The railway company pursued its business by means of cars propelled by electricity, partially supplied through feed-wires over and along the edge of the pavement. The telegraph company had its poles along the curb-line, and its wires extending along the street were over and along the feed wire, which, though insulated, carried a deadly current. * * * They owed it to Nelson that his lawful use of the street, should be substantially as safe as it was before the telegraph and railway plants had so occupied it. It was their plain duty, not only to properly erect their plants, but to maintain them in such condition as not to endanger the public." *Nelson's Case* was approved and followed in *Brown* v. *Edison Elec. Co.,* 90 Md. 400, and in *Walter* v. *Baltimore Elec. Co.,* 109 Md. 513. In *Walter's Case* a boy eight years old was injured, while passing along one of the streets of Baltimore City, by coming in contact with a hanging wire, and the Court, after stating that the evidence did not show the existence of any "sudden or unforeseen cause for the falling of the wire, nor show * * * whether it fell before or at the time of its coming in contact with the boy," said: "The recent widespread adoption of overhead wires upon public streets for the transmission of high tension electric currents for supplying light and power has been followed by numerous injuries to persons who have come in contact with broken and fallen wires. The series of damage suits flowing from these accidents have called for frequent consideration by the courts of the reciprocal rights and duties of the public and the owners of those dangerous instrumentalities. The courts agree that outside of any contractual relation the very nature of the business of transmitting such currents along highways imposes upon those engaged in it the legal duty to exercise, for the protection of all persons lawfully using the highways, the high degree of care commensurate with the danger incident

to the proximity thereto of the wires charged with their invisible but deadly power."

In the light of these well settled principles it becomes apparent that the court below properly refused to withdraw this case from the jury. The high degree of care required of such companies must be exercised not only in the construction but also in the maintenance of their plants. The fact that the appellant's poles were planted on its own private right of way did not relieve it of the duty to use that degree of care commensurate with the danger to which those using the highway were exposed by reason of the construction and maintenance of its high tension wires. The obligation of such companies to exercise proper care is not determined by their right to construct and maintain their lines, but rests upon their duty to protect others while in the lawful exercise of their rights. As we have said, there was evidence tending to show that the appellant by the exercise of proper care could have known that the tree was decayed, and that the limb that gave way would probably fall and break its wire, and that it did nothing either to protect its wires or to protect the public from injury that might be caused by a fallen wire. To hold that the appellant was relieved from all obligation or duty to the public simply because the tree stood on private property would deprive those lawfully and properly using the highway of the protection they were entitled to. If electric companies are negligent in permitting broken wires to remain in contact with their high tension wires, and are liable for injuries resulting from such negligence, as in *Nelson's Case, supra,* there is greater reason why they should be held liable for injuries resulting from maintaining their lines so close to a decayed tree as to endanger those in the lawful use of a highway. The appellant's line was on its private right of way where the appellant had a right to construct and maintain it. But it was also along a public highway where the public and the little child that was killed had a right to be, and the company was, therefore, required in maintaining

its line to exercise that high degree of care commensurate with the danger to which it exposed those using the highway. If the proximity of its line to the decayed tree rendered the highway unsafe for the use of the public, it was the duty of the appellant either to have the limb removed or to exercise proper care to protect its wires, and if the injury complained of was the result of its failure to discharge that duty it should be held liable.

In the cases of *Albany* v. *Watervliet T. & R. R. Co.,* 76 Hun. 136, and *Electric Railway Company* v. *Shellon,* 89 Tenn. 424, the facts were entirely different from the facts in the case at bar, and the decisions in those cases do not sustain the contentions of the appellant in this case.

Finding no reversible error in any of the rulings of the court below, the judgment from which this appeal was taken must be affirmed.

*Judgment affirmed, with costs.*