STATE OF MARYLAND, TO THE USE OF LILLIAN
BAHNER ET AL *v.* CONSOLIDATED GAS
ELECTRIC LIGHT & POWER CO.

[No. 44, January Term, 1930.]

*Decided May 22nd, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Isaac Lobe Straus* and *Avrum K. Rifman,* with whom were *R. Lee Slingluff* and *Stuart M. Yeatman,* on the brief, for the appellant.

*E. M. Sturtevant,* with whom was *Paul Stephen Clarkson,* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This suit was brought in the name of the State for the use of the widow and minor children of Joseph A. Bahner, on the charge that he came to his death from electrocution caused by the negligence of the defendant (appellee), and from a judgment on a directed verdict for the defendant the appeal is taken.

The deceased, a young man of twenty-two, with his wife and their two boys, resided at Dundalk in Baltimore County, in a bungalow located on a lot fronting thirty-five feet on New Pittsburg Avenue and running eastward seventy feet along Ninth Avenue to Maxwell Avenue. There was a pole at the corner of Maxwell and Ninth Avenues from which two electric wires ran diagonally across the lot about twenty-eight feet above the ground and eight or ten feet above the house to an arc light on New Pittsburg Avenue located directly in front of the house.

Eight feet in the rear of the house was a sycamore tree, the branches of which spread over the rear of the house and eastwardly to the pole at Maxwell Avenue. According to the evidence, the light wires ran through the branches on the southerly side of the tree, the tree having been trimmed to let the wires through. The deceased, with his family, had occupied the house only three weeks. It belonged to his mother, Mrs. Mamie Martin, who, for several years, had

lived in the next house to the north. A few days before his death the deceased had installed a radio in his house, for which he had an aerial in the tree at a height of two or three feet above the house.

On the afternoon of February 18th, 1925, about five o'clock, the deceased was near the tree in the rear of his house, and his mother went over to the son's, where she saw him with a roll of wire in his hand. She asked what he was doing, and he told her he was going to erect a higher aerial. He had nailed a strip of wood on the tree, to which the new aerial was to be attached, two or three feet higher than the one already there, to which the first aerial was attached. She passed into the house and in a few minutes her daughter-in-law went into the yard and found her husband lying dead on the ground, about midway between the tree and the pole at the corner of Maxwell and Ninth Avenues, with the wire in both hands. Mrs. Bahner tried to release his hands and was severely shocked herself.

When Mr. Bahner was found he had both hands on the coil of wire which his mother saw before the accident; the wire was across the electric wires at the pole, and on the end of the wire was an iron or steel wedge which had been attached. Whether he attempted to throw the wedge over the wooden strip on the tree, as the mother thought and the appellee contends, or over the electric wire to be attached to an object on the other side of Ninth Avenue, no one can tell, as no one saw the deceased in the act of throwing the wedge. The theory of the defense was that he intended to attach the wire to a tree on the opposite side of Ninth Avenue. The facts can only be judged from the situation as it appeared after the accident, and then the wire was lying across the light wires "an inch or two from the insulator" on top of the pole at Ninth Avenue and Maxwell, "over to the branches of the tree. It hung over the branches right straight down to Mr. Bahner." To the other end the wedge was attached. The accident was in February, when there was no foliage on the tree. There was evidence that, near the insulator which the

electric and aerial wires crossed, and at a point about eighteen feet from the pole at Maxwell Avenue, the insulation on the electric wire was ragged, and about eight feet nearer the tree the copper wire was exposed.

This court has not gone so far as to say that the mere fact of uninsulated wires and the happening of an accident create a situation from which a presumption of negligence arises. The duty of the defendant, as stated by this court in *Cumberland v. Lottig,* 95 Md. 42, 47, is, "that outside of any contractual relations between the parties to the suit the very nature of the business conducted by the electric company imposed upon it a legal duty to see that its wires when strung where persons were liable to come in contact with them were properly placed and insulated with reference to the safety of such persons." *Brown v. Edison Electric Co.,* 90 Md. 400, 406; *Grube v. Baltimore,* 132 Md. 355, 359; 9 *R. C. L.* 1213; 20 *C. J.* 355.

The appellant cited, as authority, *Western Union Tel. Co. r. State, use of Nelson,* 82 Md. 293; *Brown v. Edison Electric Co.,* 90 Md. 400; *Ziehm v. United Elec. Lt. & Pow. Co.,* 104 Md. 48; *Walter v. Baltimore Electric Co.,* 109 Md. 513, 524; *Hagerstown & Frederick Rwy. Co. v. State, use of Weaver,* 139 Md. 507, and *Annapolis Power Co. v. State, use of Smith,* 152 Md. 241. In all of those cases the doctrine of *res ipsa loquitur* was applied. In each of them the party injured or killed was in a place where he or any other person so engaged might reasonably be expected to be at the time of injury, and the negligence of the defendant was thus presumed.

The appellant offered some evidence of instances when sparks had been seen on the tree in the yard due to the swaying of the wires and the tree. One witness testified that "any day there was a storm or heavy wind or weather you could see fire flying from limb to limb where they rubbed against the limb." If there had been evidence of any such condition at the time of the accident, and that the current was transmitted to the tree, and that by reason of his contact with the tree Mr. Bahner was electrocuted, the burden would

then have been on the appellee, and the doctrine of implied negligence would have been applicable. But in this case, as in so many cases of electrocution, there were no witnesses to the accident; the evidence is wholly circumstantial, and the inferences to be drawn must be from the conditions as found at the time.

The deceased in this case was found with a wire in his hands which was lying across the appellee's electric wires, with a wedge on the other end of the wire, intended for an aerial, which could have been attached to it for no other purpose than to propel it through the air and carry it across appellee's wires. If the deceased knew anything, he must have known that contact of the aerial with the electric wire might have conducted the current from the electric wires through the aerial to any person or object the latter may have touched. The thing is so self-evident that it excludes every other theory as to how the accident did happen. As said in *State, use of Bell, v. Eastern Shore Gas & Electric Co.*, 155 Md. 660, 664, "The failure of the decedent to observe ordinary care for his protection from a danger with which he must have long been familiar is clearly shown by the uncontradicted evidence in the record. It is a decisive fact which must be given its legitimate effect as against the recovery sought in this action." *Pollock on Torts* (9th Eng. Ed.), 182. In *Cumberland v. Lottig*, 95 Md. 42, 48, an action brought by a child to recover damages for burns received due to taking hold of a live street lighting wire which crossed over the roof of the house, whither he had been taken by his mother, it was said: "The evidence of the infant plaintiff's mother showing, as we have said, that she recklessly and carelessly took him into a place of danger, there can be no recovery, because if he was too young to know of the dangerous character of the wire his mother's negligence must be imputed to him, and if he was old enough to know better than to take hold of the wire his own negligence would be fatal to his case."

We do not find the facts in this case to justify the application of the doctrine of implied negligence, which would be necessary to require the appellee to go forward with its proof

in the face of the evidence that the primary cause of the accident was the deceased's failure to observe the peril of which he must have been aware. "The presumption of concern for personal safety must yield to proof of actual imprudence." *State, use of Bell, v. Eastern Shore Gas & Elec. Co.,* 155 Md. 654, 663. The action of the trial court in granting the prayers of the appellee for an instructed verdict, which is the subject of the fifteenth exception, in our opinion was proper.

The appellant reserved fourteen exceptions to adverse rulings on questions of evidence. The first, to the admissibility of a photograph taken when the tree in evidence was in foliage, was abandoned. The second, third, fourth, fifth, eighth, and ninth were to questions asked those witnesses who had lived on the premises, whether they had ever been advised by the appellee company or otherwise informed as to whether the electric line carried a high or low voltage. They, if they knew anything about the line, knew that it carried sufficient current for an arc light located directly in front of the house occupied by the deceased, and that it was charged with electric current, which is always notice of danger, to be treated with caution, and contact with which is to be avoided by those who are mindful of their safety. It was such a current (street lighting), with which the boy in the *Lottig* case, *supra,* came in contact. The measure of the negligence of the one injured is not diminished by the degree of danger of contact. In proportion to the voltage the appellee might be required to exercise greater care and provide more adequate safeguards for those whose business or rights might expose them to danger. But where no negligence is shown and none presumed, no inferences are to be drawn from the fact that the one having contact with an inherently dangerous current did not appreciate the extent of the danger to which he exposed himself. The deceased knew the wire was there, and it was because he attempted to throw his aerial over it that he came to his death. He knew, or he ought to have known, it was a hazardous thing to do, and was an act which the appellee had no reason to expect of him.

As said in *Linton v. Balto. Mfg. Co.,* 109 Md. 404, 411,

144

quoting Bailey on Master's Liability, "He must use reasonable care in examining his surroundings, to observe and take such knowledge of danger as can be attained by observation. In performing the duties of his place, he is bound to take notice of the ordinary operation of familiar laws and to govern himself accordingly. If he fails to do so the risk is his own." *Texas Company v. Wash., B. & A. R. Co.*, 147 Md. 167; *Fulton Bldg. Co. v. Stichel*, 135 Md. 542, 548; *Baltimore v. Bassett*, 132 Md. 427, 431; *Sullivan v. Smith*, 123 Md. 546, 556; *Maryland Electric Ry. Co. v. Beasley*, 117 Md. 270, 279; *Helms v. Balto. Traction Co.*, 84 Md. 515, 526.

The eleventh, twelfth, thirteenth, and fourteenth exceptions were taken to objections by the appellee to questions asked as to whether there had been any reports to the appellee's employees of defects in the electric wires or any repairs made. There was no reason why they should not have been allowed, though there appears to be no causal connection between the defects and repairs testified to and the duty of the appellee to insulate against the character of contact causing the accident, and therefore no reversible error.

The sixth exception was to a ruling of the court on a question asked Mrs. Martin, mother of the deceased, as to what the appellee had done to the line after the accident. "The change of the location of the wires after the accident could not affect the responsibility of the appellee at the date of the accident." *Ziehm v. United Elec. Lt. & Pow. Co.*, 104 Md. 48, 61. The seventh and tenth exceptions were to the overruling of the appellant's objections to questions on cross-examination as to the location of the aerial across the electric wires and with reference to the tree. The questions were on matters which had been raised by the direct examination of the witnesses, pertinent to the issues in the case and properly admitted.

Finding no reversible error on the rulings on the evidence and none on the rulings on the prayers, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*