SMITH, ET VIR *v.* KELLY, ET AL.

[No. 357, September Term, 1966.]

*Decided May 11, 1967.*

The cause was argued before HAMMOND, C. J., and MARBURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*Samuel D. Hill,* with whom were *George W. White, Jr.* and *Buckmaster, White, Mindel & Clarke* on the brief for appellants.

*C. Stanley Blair,* with whom were *Cameron, Close, Reed & Blair* on the brief for appellees.

MARBURY, J., delivered the opinion of the Court.

J. Claude Smith and his wife, Frances T. Smith, plaintiffs-appellants, sued Margaret S. Kelly and her husband, Frederick H. Kelly, individually, and as partners trading as Kelly's Laundromat, for injuries received by Mrs. Smith, a patron, as the result of her being struck by a piece of a drum of an extractor which broke off and was flung from the drum which contained a spinner basket revolving at 1750 r.p.m. The drum, in which the spinnner basket revolved, was stationary. At the close of the Smith's case, the trial court directed a verdict in favor of the defendants-appellees. From the judgment on the verdict the Smiths appealed.

In their amended pleas, appellees denied the existence of the partnership as alleged and asserted that Kelly's Laundromat was solely owned by Margaret S. Kelly. As a part of the business of the laundromat, self-service, coin-operated, automatic machines for laundering clothes and extracting water from the washed clothes were provided for the patrons. Customers usually operated the self-service machines without supervision or assistance from employees of the laundromat, although help and instructions were available upon request.

On the morning of October 20, 1962, Mrs. Smith, as had been her custom for approximately two years, did her weekly laundry at Kelly's. She used the extractor without supervision or guidance, and she never asked for nor received instructions from anyone connected with the laundromat since she was familiar with the extractor's use. She placed her wet laundry in the spinner basket inside the drum of the extractor through the opening at the top. She testified that she put the clothes in the spinner basket in the usual manner, covered the clothes with a protective cloth to keep them in the basket, lowered the top and put a coin into the machine to start it. She noticed nothing unusual about the extractor. During the machine's operation, Mrs. Smith stood about ten feet away from it. After standing there about five minutes, she heard a noise, which sounded like a stick drawn along a picket fence, coming from the extractor;

and she was struck on the knee by a piece of fiberglass which had broken off from the top of the drum of the extractor. At that time or within a few seconds after, a piece of cloth from a pair of denim trousers which were in the extractor flew by her. After she was struck, she did not examine the extractor to see what had happened; and she did not remove the clothes from the extractor.

Mr. Kelly, who helped run the business and who was in another part of the building at the time of the injury, heard the noise and went to investigate. He testified that the noise he heard was unusual for the extractor, but he had heard a similar noise before when clothes which had partially escaped from the basket beat on the inside of the drum while they were spinning. When he had heard this noise before, the only consequences had been the fraying of an article of clothing in the extractor. He stopped the extractor by pulling the plug from the electrical outlet. He observed that the fiberglass top of the drum, which was connected to the lower part of the drum made of metal, had separated from the lower portion of the drum and was sitting on the lower portion in a cocked position. A metal band which held together the fiberglass top and the bottom of the drum was loose and had slid down on the lower portion of the drum. A piece of fiberglass was broken off from the place where the top was connected by the metal band to the lower portion of the drum.

Mr. Kelly did most of the repair and maintenance work on the self-service machines. He was in charge when his wife was not there, usually in the early morning and at night near closing time. He testified that he made no regular inspection of the machines and did not check them unless he heard a sound which was not normal for the machines operating under normal conditions.

Appellants contended that the trial court erred in directing a verdict for appellees on the basis that the evidence clearly showed negligence either under *res ipsa loquitur* or under the law of bailment for hire.

The conditions for the application of the doctrine of *res ipsa loquitur* are: (1) That the apparatus which causes the injury must be such that in its ordinary operation no injury is to be

expected from it; (2) that both inspection and user must have been at the time of the injury in the control of the defendant; and (3) that there was no voluntary action on the part of the plaintiff which might have contributed to the injury. *Munzert v. American Stores*, 232 Md. 97, 192 A. 2d 59; *Williams v. Mc-Crory Stores Corp.*, 203 Md. 598, 102 A. 2d 253; Farinholt, *Res Ipsa Loquitur*, 10 Md. L. Rev. 337 (1949).

The extractor located on appellees' premises was in constant use for various periods of time by members of the public who had exclusive possession and control over it while it was in use. The doctrine of *res ipsa loquitur* is not available in this case since the machine was not in the sole control of appellees. *Williams v. McCrory Stores Corp., supra; Buria v. Rosedale Engineering Corp.*, 7 A. D. 2d 486, 184 N. Y. S. 2d 395 (1959), *motion for leave to appeal denied*, 7 N. Y. 2d 706, 162 N. E. 2d 753 (1959). The docrine also is not applicable to this case because of the opportunity for intervening forces to have contributed to the machine's malfunction through no fault of appellees. *Dorsey v. General Elevator*, 241 Md. 99, 215 A. 2d 757; *Brookshire v. Florida Bendix Co.*, 153 So. 2d 55 (Fla. App. 1963). As the court below pointed out, it would be quite permissible to infer that Mrs. Smith improperly packed the wash into the basket of the extractor as some of the clothes which she placed in it were found torn and tattered after the incident.

Appellants urged that appellees were negligent, and therefore liable, for failure to make inspections to see whether the extractor was in good working order. See *Kaplan v. Stein*, 198 Md. 414, 84 A. 2d 81; *Milestone System v. Gasior*, 160 Md. 131, 152 Atl. 810.

Assuming that the evidence sustains appellants' position that appellees failed to make proper inspections, negligence is still not established unless it is shown that proper inspection would have disclosed the extractor to have been defective. The evidence must show that the inspection would or should have revealed a defect. *Buria v. Rosedale Engineering Corp., supra.* Cf. *Williams v. McCrory Stores Corp., Kaplan v. Stein, Milestone System v. Gasior*, all *supra*. See also Restatement (Second), *Torts*, Section 408, "Lease of Chattel for Immediate Use

"One who leases a chattel as safe for immediate use is subject to liability to those whom he should expect to use the chattel, or to be endangered by its probable use, for physical harm caused by its use in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it."

In *Buria,* which involved a suit for damages for injuries received by the plaintiff while she was using a washing machine maintained in the basement of an apartment house for the convenience of the tenants, the court rejected plaintiff's argument that because it was the defendant's duty to maintain the machine in good working order, they could be held liable even though no notice, either actual or constructive, could be charged to them. It said:

"The duty to properly maintain does not in and of itself fasten liability in the event of an accident due to a defect. It merely fixes the obligation the negligent performance of which gives rise to liability. It does not do away with the necessity for proving negligence. Where do we find negligence if notice of the defect was not brought home to the defendants or if in the circumstances the defendants could not have been expected to know of such defect? Notice in this case is particularly essential as a prerequisite to liability because the machine was in constant use by the tenants and subject to the possibility of abuse at any time. To hold otherwise would be to charge the defendants with the liability of an insurer — a liability which cannot arise merely from an obligation of proper maintenance." 184 N. Y. S. 2d at 397.

There is nothing in the evidence which would show negligent conduct on the part of appellees; and there is no indication, above mere speculation, that appellees should have anticipated that a piece of the drum would break off and be flung through the air or that an inspection would or should have revealed a defect, if any.

*Judgment affirmed, with costs.*