## MARK THOMAS DAGEFORDE ET AL. *v.* THE POTOMAC EDISON COMPANY

[No. 579, September Term, 1976.]

*Decided February 9, 1977.*

The cause was argued before GILBERT, C. J., and THOMPSON and MOORE, JJ.

*Dan Rupli,* with whom was *Pierre E. Dostert* on the brief, for appellants.

*John E. Sandbower, III,* with whom were *Michael A. Pretl* and *Smith, Somerville & Case* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

At the conclusion of a bench trial in the Circuit Court of Frederick County, Judge Robert E. Clapp, Jr. found that the appellants, Mark Thomas Dageforde, et al., had not established primary negligence on the part of The Potomac Edison Company, the appellee, arising from electrical burns sustained by the minor appellant. On this appeal, the appellants allege that primary negligence was established either from the indiscriminate placing of a dangerous electrical pole or by the doctrine of *res ipsa loquitur.* They further contend that the Maryland law, regarding the right of parents who witness an injury to their child to recover for shock and mental anguish, should be re-examined.

In 1962 the appellants moved to a farm near Myersville, Maryland. On the premises was an electrical pole in close proximity to the house. An uninsulated 7,200 volt high-power line ran into a transformer at the top of the pole. Below this wire was another uninsulated line, sometimes called a neutral ground line, running into the transformer which created the high voltage circuit. From the bottom of the transformer to the house ran a triplex line which provided the electrical current for the various appliances inside the house. This line consisted of two insulated 120 volt wires twisted around an uninsulated neutral ground wire which tied into the pole's guy wire. In close proximity to this pole was an apple tree. The triplex line ran through the top branches of the tree. These top branches, however, were not sufficiently sturdy to bear the weight of a person, even a small boy, climbing the tree. All of the branches were several feet from both of the high tension wires.

On September 30, 1971, twelve-year old Mark Thomas Dageforde, one of the appellants, left his house, after dinner, to pick apples. From the standpoint of the electrical service inside the house, it would appear that the power lines were functioning properly at that time. A short while later there was an unusual noise, the lights flickered, and Mrs.

Dageforde and another son ran out of the house to find Mark lying on the ground, at the foot of the apple tree, severely burned. The neutral ground wire of the triplex line was found broken three to five feet from where it connects to the pole. No other wires were broken.

At trial none of the witnesses could make a positive statement as to how the injury had occurred. Mark Dageforde testified that he was climbing in the apple tree when, all of a sudden, he saw a light flash, and then he was on the ground. On cross-examination he indicated he might have been on the pole. At the hospital after the accident he told the doctor that he was climbing the electric pole when he was shocked. He could remember nothing more. Several theories were offered by each side. The appellants suggested that the boy was climbing the tree when one extremity of his body came within six inches of the broken ground wire and another extremity of his body came within six inches of the guy wire which formed a circuit, causing the burns. The appellee's evidence suggested that the burns could have been caused only by touching a high tension wire, which means that the injury was a result of climbing to the top of the electric pole. Mark had knowledge that he could be burned by electrical wires.

The appellants contend that the placing of the pole and transformer so close to a tree, which the appellee knew would be climbed by the appellants, was primary negligence. They state that the one conclusion which can be reached in the case is that if the pole had not been next to the tree Mark Dageforde would not have been burned. The trial judge found:

> "Now, the plaintiff has introduced an expert whom I found to be qualified to testify and give an opinion. It was his belief that a broken wire, a neutral wire, characterized from the evidence, found upon inspection by the power company crew to be broken at a point some three to five feet from the pole involved, had caused a buildup of voltage sufficient that when the boy climbed the tree one extremity came within six inches of it at one point

and another extremity or portion of his body came within six inches of the ground wire that was on the electric pole sufficient to form a circuit and to cause these burns.

"Testimony of the expert produced on behalf of the defendant was to the effect that the accident could not possibly have happened in this particular way, both from the standpoint of examination and knowledge of the injuries and also from a knowledge of the propensities and characteristics of electricity. Now, I can take for granted and I would so find in this case that this pole was located at such a point next to the apple tree that the power company would be charged with knowledge that children of that family would climb that tree. They had a duty therefore to see that there was nothing in that power system that would endanger those who would climb that tree to get apples. If this were a high wire or high voltage wire as seems to be the cases mainly dealt with in 27 ALR 2d and if this was a case of a tree climber coming in contact with the high voltage wire, or if it were a case where the climbing of the tree caused contact of the tree with a high voltage wire that transmitted this electrical high voltage to a person climbing, I would have no problem at all here finding that there was negligence on the part of the defendant, causing the injury. That, however, is not this case. I must say, I say that with some regret because of the serious injuries to this infant plaintiff and to his family; but *he was not injured in this case by coming in contact with this line that was in close proximity to a tree that he would normally be expected to climb — he was injured by some totally unexpected event, the cause of which has not been established, at least to my satisfaction as a finder of fact.* The expert opinion of the witness for the plaintiff undertakes to state and presupposes that this line had broken sometime prior to the time that the infant plaintiff got to the point where there was contact either

within six inches by himself or contact with a tree branch which transmitted excess power voltage through the tree to the infant plaintiff. As I say, this presupposes, I think, the fact that the wire had broken prior to the time that the infant plaintiff was hurt. It presupposes also what I find difficult to accept — the fact that one part of the plaintiff's body — infant plaintiff's body could have been within six inches of this broken triplex line and another part within six inches of the ground wire that was attached to the pole. I am unconvinced that a twelve-year-old boy is of such size that this could happen, under the testimony before me where by the admitted testimony from the plaintiff the upper branches of this tree would not support even a twelve-year-old boy.

"Even assuming, however, that the version of the accident as testified to by the plaintiff's expert could be accepted, I would still have a problem with the question of whether or not the power company was negligent in not anticipating an injury such as this. There is no indication that they had warning in any way that this line was broken. There is no indication that the line was so worn prior to the accident that inspection by the company even the day before would have brought about a replacement or repair. Certainly there is no indication that the power company should have anticipated that a tree climber would get in the position required as the basis for the expert opinion as given by the plaintiff's witness. As I say, *this is not a case of proximity to a high voltage line; all the testimony, undisputed, is that, unbroken, this triplex line would have done no harm to anyone even by grasping it in a firm grip.* The consequence is that I do find as a fact that there is no primary negligence against the defendant." (Emphasis added).

The law with regard to primary negligence of electric companies in this type of case was stated in *Driver v.*

*Potomac Electric Power Company,* 247 Md. 75, 80-81, 230 A. 2d 321 (1967), quoting *Le Vonas v. Acme Paper Board Company,* 184 Md. 16, 21, 40 A. 2d 43 (1944):

> "The law does not require an electric company to insulate its high-tension wires everywhere, but only where there is reason to apprehend that persons may come in contact with them, either in the pursuit of their calling or where they may be reasonably expected to go. In the absence of statute or ordinance, it is not necessary to insulate wires which are so placed that no one could reasonably be expected to come in close proximity to them."

For the electric company to be found liable, the person involved in the accident may not be a trespasser or mere licensee on the company's property (the pole), but must be in an adjacent position where they might be reasonably expected to come in close proximity to the source of danger. *Stansfield v. C. & P. Telephone Co.,* 123 Md. 120, 127, 91 A. 149 (1914). The mere fact that the tree could be utilized to climb the pole does not establish negligence. Where the wires have been placed above and beyond the sphere of peril to the public, it would be subjecting the electric company to an unduly strict responsibility to require them to provide against the possibility that their own pole might be utilized as a means of access to the danger. *Stansfield v. C. & P. Telephone Co., supra.* The burden was on the appellants to prove that the accident occurred while Mark was in the tree. The trial court found that this had not been established to the satisfaction of the finder of fact. As there was evidence to support this finding, we cannot second guess to hold the finding clearly erroneous. *Staley v. Staley,* 25 Md. App. 99, 110, 335 A. 2d 114 (1975).

Appellants also contend that the doctrine of *res ipsa loquitur* would apply to create the inference of negligence. The law concerning this doctrine was reviewed at length in *C. & P. Telephone Company v. Hicks,* 25 Md. App. 503, 337 A. 2d 744 (1975), *cert. denied,* 275 Md. 750. As that case states at page 516, quoting *Leikach v. Royal Crown,* 261 Md.

541, 547-548, 276 A. 2d 81 (1971), the three criteria which must be established by the appellants in order to invoke the application of *res ipsa loquitur* are:

" '1. A casualty of a sort which usually does not occur in the absence of negligence.

2. Caused by an instrumentality within the defendant's exclusive control.

3. Under circumstances indicating that the casualty did not result from the act or omission of the plaintiff.' "

In the instant case the appellants have failed in their burden to establish the first and third criteria.

Standing alone, uninsulated wires and the happening of an accident do not create a situation from which the presumption of negligence arises. *State ex rel. Bahner v. Consolidated Gas and Electric Co.*, 159 Md. 138, 141, 150 A. 452 (1930). It was necessary for the appellants to establish that at the time of the accident Mark was located in a position where a duty was owed to him by the appellee. Upon establishing this the company would have been required to use that degree of care which is commensurate with the great danger. *Hagerstown & Frederick Railway Co. v. State ex rel. Weaver*, 139 Md. 507, 115 A. 783 (1921). *See also, Annapolis & Chesapeake Bay Power Co. v. State ex rel. Smith*, 152 Md. 241, 136 A. 615 (1927). As has been stated before, the appellants did not meet the burden of establishing that Mark was in such a place.

It is just as obvious that it was not shown that the casualty did not result from an act or omission of the plaintiff. Anyone with knowledge of the presence of electrical wires and their danger who does not take the proper precautions for his safety is guilty of contributory negligence. *Frazee v. Baltimore Gas and Electric Company*, 255 Md. 627, 258 A. 2d 425 (1969). Mark had that knowledge. While the trial judge found that the appellee had not established that the child had climbed the pole, thus precluding a finding of contributory negligence, in order to

establish *res ipsa loquitur* the appellants had the burden of establishing the lack of contributory negligence. *C. & P. Telephone Co. v. Hicks, supra,* at 530. This burden was not met.

As we affirm the trial court's finding that the appellants have failed to prove negligence on the part of the appellee, the adult appellants could not recover for shock and mental anguish resulting from witnessing the injury of their child, even if Maryland recognized such an action.

*Judgment affirmed.*
*Appellants to pay the costs.*