606 A.2d 305

**Selma D. HARRIS**

v.

**OTIS ELEVATOR COMPANY.**

**No. 1422, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

May 11, 1992.

Alan F. Post, Bethesda, for appellant.

M.M. Hogans–Ott (W. Scott Sonntag and O'Malley & Miles, on the brief), Upper Marlboro, for appellee.

Argued before MOYLAN, CATHELL and MOTZ, JJ.

MOYLAN, Judge.

The appellant, Selma D. Harris, appeals a decision of Judge William M. Cave in the Circuit Court for Montgomery County, granting the appellee, Otis Elevator Company's, Motion for a Directed Verdict. The appellant raises the following contention:

> That *res ipsa loquitur* applies to an automatic elevator which fails to level properly in an action against the elevator service company.

The appellant was a long-time resident of the Georgian Towers Apartments ("Georgian Towers"), an apartment complex located in Silver Spring. Georgian Towers is owned by Georgian Associates Limited Partnership ("Georgian Associates"). The complex consists of two wings—the A–B wing and the C–D wing. There are four elevators at Georgian Towers and both wings of the complex are serviced by these elevators. One of the elevators is numbered 502. The four elevators were manufactured and installed by Otis Elevator Company ("Otis"). Pursuant to a full maintenance contract between Otis and Georgian Associates, Otis provided exclusive inspection, maintenance, repair, and service for the elevators, commencing at the time of their installation and continuing, unabated, through February 13, 1988—the date of the appellant's injury.

On February 13, 1988, at approximately 10:20 a.m., the appellant left her eleventh floor apartment and called for an elevator. Elevator # 502 arrived in response to the call. Like Georgian Towers's other three elevators, # 502 served as a passenger elevator. Unlike the other three elevators, however, # 502 also served sometimes as a freight elevator. When someone was moving in or out of the building or a delivery was being made, it was elevator # 502 that would be used. Elevator # 502 was assigned this dual role because it could be "locked off" by Georgian Towers's management and thus better reserved for a particular use.

On the morning of February 13, 1988, elevator # 502 was serving as a passenger elevator.

When # 502 arrived, its doors opened and the appellant and another resident of the eleventh floor entered the elevator. The appellant stood closer to the door. The elevator proceeded directly to the lobby level, making no intermediate stops. Upon reaching the lobby, the doors of the elevator began to open. Even as they did, however, the elevator continued to "sink" or descend below the lobby level some three to six additional inches. After the doors had opened, the appellant stepped off, tripped and fell, sustaining various injuries to her person.

On June 20, 1989, the appellant filed suit against both Otis and Georgian Associates, alleging negligence and seeking monetary damages for her injuries. Prior to trial, Georgian Associates purchased a release from the suit. On August 14, 1991, the case was heard solely against Otis, before Judge Cave and a jury. At trial, the appellant provided no direct evidence of appellee's negligence, but relied instead exclusively upon the doctrine of *res ipsa loquitur* and the permissible inference of negligence allowed thereunder. At the conclusion of the appellant's case, Otis moved for a judgment. It did so on the grounds that: (1) the appellant had failed to demonstrate that Otis was in exclusive control of elevator # 502, and (2) no inference of negligence was permissible from the failure of the elevator to level, absent expert testimony going to the cause of the misleveling. The trial court granted appellee's Motion, finding that: (1) there was no permissible inference of negligence from the misleveling of the elevator and (2) the use and operation of the elevator by other tenants precluded a finding that Otis possessed exclusive control of the elevator. This appeal followed.

In a negligence action, "the burden of proving defendant's negligence rests upon the plaintiff." *Walker v. Vail,* 203 Md. 321, 326, 101 A.2d 201 (1953). There are circumstances, however, where, "without shifting this burden, an inference of negligence on the part of a defendant may

arise from the circumstances." *Id.* This doctrine of *res ipsa loquitur* may be invoked by an injured party where the injury "arises from some condition or event that is in its very nature so obviously destructive of the safety of persons or property" and "so tortious in its quality as, in the first instance at least, to permit no inference save that of negligence on the part of the person in control of the injurious agency." *Strasburger v. Vogel,* 103 Md. 85, 89, 63 A. 202 (1906).

Three criteria must be established in order to invoke the application of the doctrine. *Dageforde v. Potomac Edison Co.,* 35 Md.App. 37, 43, 369 A.2d 93 (1977). These are:

" '1. A casualty of a sort which usually does not occur in the absence of negligence.

2. Caused by an instrumentality within the defendant's exclusive control.

3. Under circumstances indicating that the casualty did not result from the act or omission of the plaintiff.' "

*Dageforde,* 35 Md.App. at 43, 369 A.2d 93 (quoting *Chesapeake and Potomac Telephone Co. v. Hicks,* 25 Md.App. 503, 516, 337 A.2d 744 (1975), *cert. denied,* 275 Md. 750 (1975)). *See Smith v. Kelly,* 246 Md. 640, 643–644, 229 A.2d 79 (1967); *Munzert v. American Stores,* 232 Md. 97, 104, 192 A.2d 59 (1963).

In the instant case, the appellant has, at minimum, failed in her burden to establish the second criterion. An inference of negligence cannot be drawn unless the " 'thing which produced the injury was under the **management** and **control** of the defendant' " and the " 'surrounding circumstances tend to show that the injury was the result of some condition or act which ordinarily does not happen if those who have the **control** or **management** thereof exercise proper care.' " *Lee v. Housing Auth. of Baltimore,* 203 Md. 453, 462, 101 A.2d 832 (1954) (emphasis added) (quoting *Greeley v. Baltimore Transit Co.,* 180 Md. 10, 12, 22 A.2d 460 (1941)). *See Leidenfrost v. Atl. Masonry,* 235 Md. 244, 249, 201 A.2d 336 (1964). As the Court of Appeals observed in *Lee,* 203 Md. at 463, 101 A.2d 832:

"The element of **control** has an important bearing as negativing the hypothesis of an intervening cause beyond the defendants control, and also as tending to show affirmatively that the cause was one within the power of the defendant to prevent by the exercise of care. Thus it has been held that the inference is not permissible where the plaintiffs' testimony tends to show an exculpatory cause, or where the lapse of time and the opportunity for interference by others weakens the probability that the injury is attributable to the defendant's act or omission." (citation omitted) (emphasis added).

In *Smith v. Kelly*, 246 Md. at 642, 229 A.2d 79, the plaintiff, a patron of defendant's laundromat, was injured when a piece of an extractor broke off and was flung from the extractor, striking her on the knee. She brought suit alleging negligence on the part of the defendants. At the close of plaintiff's case, the trial court directed a verdict in favor of the defendants-appellees. The plaintiff appealed, contending that the trial court erred in directing a verdict for the defendants on the basis that the evidence "clearly showed negligence" under *res ipsa loquitur. Smith*, 246 Md. at 643, 229 A.2d 79. After summarizing the conditions required for the application of the doctrine, the Court determined that it was not applicable to the facts of the case. In so doing, it noted that:

"The extractor located on appellees' premises was in constant use for various periods of time by members of the public who had exclusive possession and control over it while it was in use. The doctrine of *res ipsa loquitur* is **not available** in this case since the machine was **not in the sole control of appellees.**" "The doctrine ... is not applicable to this case because of the opportunity for intervening forces to have contributed to the machine's malfunction through no fault of appellees." (citations omitted) (emphasis added).

*Smith*, 246 Md. at 644, 229 A.2d 79. *See Burkowske v. Church Hosp. Corp.*, 50 Md.App. 515, 523, 439 A.2d 40

(1982); *Chesapeake and Potomac Telephone Co. v. Hicks,* 25 Md.App. 503, 518–523, 337 A.2d 744 (1975).

The issue in the case at bar is whether the trial court erred in granting Otis's Motion for Judgment. In considering whether or not a granting of a judgment as a matter of law is appropriate, we examine "all of the evidence in the light most favorable to the Plaintiff and give the Plaintiff all plausible inferences." *Dorsey v. General Elevator Company,* 241 Md. 99, 101, 215 A.2d 757 (1966). Applying the foregoing principles to the facts of this case, we hold that the appellant failed to demonstrate that Otis had exclusive control of elevator # 502. The appellant contends that, by virtue of its maintenance contract with Georgian Associates, Otis had exclusive control over elevator # 502. The evidence adduced at trial belies such a conclusion. Trial testimony plainly demonstrated that this sometime freight elevator was heavily trafficked, subjected to repeated abuses and frequently mishandled by those who used it to transport cargo. The appellant herself offered proof that Otis was not in exclusive control of the instrumentality causing the injury. She testified at trial that:

"**A:** [Persons using the elevator for freight purposes] would load it, they would bang it against the top of the elevator, if they could not fit a piece into the elevator, they would shove it in. I have seen where doors have been jammed open, and tried to—the furniture being moved out, if they have not been able to get it around the corner, it—that is what I would interpret as being mishandled."

**Q:** Did you see them putting things in front of the door so they would not shut, so they are kind of banging open and banging open?

**A:** Yes."

Otis did not have exclusive control of elevator # 502.

The trial judge was correct in withdrawing the case from the jury as the appellant failed to make out a *prima facie* case of negligence.

JUDGMENT AFFIRMED;  COSTS TO BE PAID BY APPELLANT.