WILLIAMS *v.* McCRORY STORES CORPORATION

[No. 70, October Term, 1953.]

*Decided January 14, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William L. Wilson*, with whom was *Edward J. Ryan*, on the brief, for appellant.

*W. Earle Cobey*, with whom was *C. William Gilchrist*, on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This action was brought in the Circuit Court for Allegany County by Mollie Williams, widow, age 75, to recover damages for personal injuries which she sustained in a fall from a revolving stool in the store of McCrory's Stores Corporation in Cumberland.

The accident occurred on May 12, 1952, at 11:30 a.m. On that morning plaintiff made a trip from her home in Gilmore to Cumberland; and, after buying some articles in defendant's store, she went to the restaurant counter for lunch. In front of the counter is a long line of stools. At the base of the counter is a ledge. Plaintiff, who weighed about 125 pounds, testified that just as she put her foot on the ledge to push herself under the counter the stool tilted and she fell to the floor.

Defendant maintained that there was no defect whatever in the mechanism of the stool, and that it would have been impossible for the stool to tilt. Charles H. Tidwell, the manager of the store, testified that soon after plaintiff fell he made a notation of her explanation of how she happened to fall, namely: "I lost my balance as the stool turned." The manager and his assistants rendered the injured woman first aid and entered her in a hospital within 30 minutes.

At the conclusion of the testimony, the trial judge granted defendant's motion for a directed verdict. Plaintiff is now appealing from the judgment entered on that verdict.

Plaintiff contends that, even if she did not produce any direct evidence proving a specific act of negligence, she established a *prima facie* case of negligence by the rule of *res ipsa loquitur*. This rule is that where the

plaintiff in an action for injury caused by negligence has offered legally sufficient evidence to support the inference that the injury arose from want of due care, the defendant is *prima facie* guilty of negligence if the thing or condition which produced the injury was under the management and control of the defendant, and the occurrence was such as does not happen in the ordinary course of events when due care is exercised. *Frenkil v. Johnson,* 175 Md. 592, 604, 3 A. 2d 479; *Greeley v. Baltimore Transit Co.,* 180 Md. 10, 22 A. 2d 400; *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 96 A. 2d 241.

*Herries v. Bond Stores,* 231 Mo. App. 1053, 84 S. W. 2d 153, is an illustration of the rule. In that case a customer in a store accepted the invitation of a salesman to sit in a chair, and the chair collapsed and threw her backwards. The Court pointed out that the collapse of the chair under the plaintiff's normal weight of 126 pounds was most unusual; that she could not be charged with any negligence by any stretch of the imagination; and that the presumption arose that the defective condition of the chair was due to the defendant's negligence.

The rule was also applied in *Gow v. Multnomah Hotel,* 191 Or. 45, 224 P. 2d 552, where a stool broke and threw the occupant to the floor.

Another illustration is *Schueler v. Good Friend North Caroline Corporation,* 231 N. C. 416, 57 S. E. 2d 324, 21 A. L. R. 2d 417, where a customer in a store sat on one of a row of chairs attached together, and the whole row toppled over backward.

Those typical cases, however, are entirely different from the case before us. Here it is contended by defendant that plaintiff simply lost her balance and fell, and that there was no defect in any part of the stool. The rule of *res ipsa loquitur* is limited by the following considerations: (1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection or user; (2) Both inspection and user must have been at the time of the injury in the control of

the party charged; and (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. 9 *Wigmore on Evidence,* 3d Ed., sec. 2509.

The manager of defendant's store testified that the stools at the restaurant counter are the finest money can buy. Ralph Lamade, Jr., a graduate of the Massachusetts Institute of Technology and mechanical engineer for the Celanese Corporation, expressed the opinion as an expert witness that the type of stool in defendant's store is "one of the more stable designs" in use today.

The mechanical engineer described the mechanism of the revolving stool as follows:

"This stool consists of a plywood base, from which the spring and the seat are built up. There is padding and the springs underneath this cover. There is a plastic slipover cover over all of this, covering it up. * * * From the plywood base we have what might be termed a spindle, which is mounted on the bottom of the seat itself. The spindle has three arms which are mounted at 120 degrees apart, or one-third of a circle. These irons are bolted to the plywood base. * * * There are three nuts holding each one of these bolts to the arm. These bolts extend one inch below the plywood base, and, I might add, are quarter-inch regular standard bolts. From there we have the shank of the spindle, which itself is turned to three different diameters, two of which fit in seats which are machined in the base of the stool. There is also up here a flange on the top end of the shank, which rests on the top part of the stool. This flange takes all of the weight of a person sitting on the stool. The shank of the spindle, in fitting in the two machined surfaces inside the base of the stool, tends to give the stool stability and prevents it from any tipping action."

The mechanical engineer explained that when the spindle is firmly seated between the ring, there is a very slight amount of deflection inherent in this type of seat to enable it to revolve in the base. He stated that the maximum deflection on a number of stools he had examined was one-sixteenth of an inch. But he asserted that a seat will not tilt unless all three bolts holding it are loose. He stated: "All three of the nuts on the bolts would have to be loose before you would really get any noticeable tilting of the seat. With just one nut loose, the other two bolts and nuts would have a tendency to hold the plywood base close enough that the normal amount of weight put on there * * * would not be able to tilt such a seat."

It was also brought out at the trial that the stools at the restaurant counter of defendant's store had been most carefully inspected at frequent intervals. The store manager described the inspections of the stools as follows: "There are three types of inspection. One is made nightly by the bus boy as he polishes the base of the stools. He gives them a twirl to check to see that they are in good working order. We have a two weeks' inspection ever other Wednesday. It is an efficiency check on cleaning and sanitary conditions and working conditions of all the equipment at the fountain. On the first of each month we have a check chart, * * * and the maintenance man tours the entire building and checks off every item and greases the equipment and checks it for repair."

The store manager, the maintenance man, the manager of the restaurant, and the bus boy all testified that they did not know of any defect in any of the stools at the restaurant counter. Immediately after plaintiff fell the maintenance man tested the stool and found it to be in perfect working order. He sat upon it, and, although he weighed 185 pounds, it did not tilt. He swore also that the stool had been in use for a year from the day of the accident, May 12, 1952, to the day

of the trial, May 11, 1953, and it required no repairs and had never tilted.

The rule of *res ipsa loquitur* applies only when the facts established are so clear and certain that the natural and proper inference arises from them that the accident was caused by the negligence of the defendant. The rule is applied only where the demands of justice make its application essential, depending upon the facts and circumstances of each particular case. *Toy v. Atlantic Gulf & Pacific Co.*, 176 Md. 197, 210, 4 A. 2d 757; *Potts v. Armour & Co.*, 183 Md. 483, 488, 39 A. 2d 552. In the instant case the rule cannot be applied because the evidence does not support an inference that the accident was due to any fault of defendant.

It was acknowledged by the mechanical engineer that a revolving seat may tilt if it is raised from its normal position and left to rest on the shoulder. But, of course, the proprietor of a store is not under an insurer's liability as to the safety of persons who come therein. He owes to customers who enter the premises the duty of exercising ordinary care to keep the premises in a reasonably safe condition for their use, and to warn them of any dangerous condition on the premises which is known or which reasonably ought to be known to him, but not to them. The mere existence of a defective condition in a store by which an injury is caused does not render the proprietor liable as a matter of law, unless he knew, or, in the exercise of reasonable care, ought to have known, of the defect. *Moore v. American Stores Co.*, 169 Md. 541, 182 A. 436; 2 *Restatement, Torts*, Sec. 343.

In this case there was no evidence that defendant had any actual or constructive notice of any unusual or unsafe condition of the stool. The stools in defendant's store are in the temporary use and control of many patrons during the business hours of the restaurant. The manager estimated that between 15,000 and 20,000 people come to his store every week. A great many of that crowd occupy the stools at the restaurant counter.

As the Court said in *Mineo v. Rand's Food Shops*, 32 N. Y. S. 2d 23, the proprietor of a store cannot be held liable for negligence on the theory of notice of an unusual or unsafe condition of a counter seat unless the plaintiff shows that the seat was within the proprietor's exclusive possession and control.

As there was no evidence of negligence on the part of defendant in this case, the trial judge acted properly in withdrawing the case from the jury. The judgment in favor of defendant will therefore be affirmed.

*Judgment affirmed, with costs.*