# CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF MARYLAND *v.* JOSEPH H. HICKS

[No. 625, September Term, 1974.]

*Decided April 4, 1975.*

504

The cause was argued before ORTH, C. J., and MENCHINE and MOORE, JJ.

*Richard A. Reid,* with whom were *Royston, Mueller, Thomas & McLean, J. W. Sarver* and *James S. Hamasaki* on the brief, for appellant.

*John B. Jaske,* with whom were *James J. Doyle, Jr., Sherbow, Shea & Doyle* and *James A. Pine* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the court.

The primal issue on this appeal is whether the doctrine of *res ipsa loquitur* arose upon the facts and circumstances of the case.

## STATEMENT OF THE CASE

On 14 July 1972 JOSEPH H. HICKS filed a declaration in the ·Circuit Court for Baltimore County whereby he instituted an action in tort against CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF MARYLAND (Telephone Co.) claiming $75,000 damages he suffered due to its negligence. On 22 August the issue was joined by the plea of the Telephone Co. that it did not commit the wrongs alleged.[1] The action went to trial before a jury on 29 April 1974. At the close of evidence offered by Hicks, the

---

1. The same day the Telephone Co. made a third party claim against Rauschenbach Co., Inc. The third party claim was based upon an allegation in the declaration that the accident on which the action was predicated occurred on 24 June 1970 when in fact it occurred on 10 June 1970. After the amendment of the declaration on 4 December 1972 to show the correct date, the Telephone Co. directed the Clerk on 11 December to dismiss without prejudice its third party claim.

Telephone Co. moved for a directed verdict in its favor and the motion was denied. A motion for a directed verdict in its favor was again made by the Telephone Co. at the close of all the evidence and the court reserved its decision thereon until after the verdict of the jury. Maryland Rule 552. On 1 May the jury rendered a verdict in favor of Hicks and against the Telephone Co. for the sum of $26,635, interest and costs, and judgment was entered on verdict *nisi causa*. A motion by the Telephone Co. for judgment n.o.v. was filed on 6 May,[2] heard on 28 May, and denied on 25 June 1974, upon which judgment absolute was entered. The Telephone Co. filed a timely order for appeal.

## THE FACTS

We give a compendium of the evidence adduced at the trial.

On 11 March 1964 William L. Huber, who owned, in partnership with his sister, and operated the Last Chance Tavern at 3423 Eastern Boulevard in Baltimore County and the Telephone Co. entered into a contract whereby, in relevant part, the Telephone Co. agreed to "install and maintain a public telephone station" in the nature of a "Company Owned Booth" (as distinguished from a "Customer Owned Booth") on Huber's premises to "furnish service to the public thereat", and to pay Huber a commission of 15% on collections. Huber agreed to "provide suitable and safe space for the facilities furnished and proper light therefor, [and] suitable and safe approach to and retirement from such space", to "keep in a clean condition any booths furnished by Telephone Company", and to "permit the public to use said facilities". He agreed to

---

2. Rule 563 provides for a judgment *non obstante veredicto*. Section a 1 of the Rule provides that where a motion for a directed verdict at the close of all the evidence has been denied the motion for judgment n.o.v. shall be made within 3 days after the reception of a verdict. The third day after the reception of the verdict here was a Saturday so the filing of the motion on 6 May was within the time required by the Rule. See Rule 8. But in any event, § a 2 of Rule 563 provides: "Where the court reserves decision on a motion for a directed verdict, and submits the case to the jury, that action by the court operates as a motion for judgment under this Rule."

"take all reasonable precautions to protect the property of Telephone Company on [his] premises. . . ." It was expressly set out that any booths or other equipment furnished by Telephone Co. "shall remain its property and be returned to it, whenever requested, in as good condition as reasonable wear and tear will permit." The Telephone Co. installed the telephone booth.

A rough diagram of the scene was offered in evidence by the Telephone Co. and its counsel referred Hicks to it during the cross-examination of that witness. The transcript, time and again, read "(indicating)", but unfortunately, as is too often the case, counsel did not read into the record exactly what was being indicated, so we can only construe the "indications" from the tenor of the questions and answers. The diagram bears no directional arrow but it appears that the Last Chance Tavern is located near the southwest corner of Eastern Boulevard and Carroll Island Road. It faces on Eastern Boulevard, set back about 30 feet, and is about 100 to 150 feet from Carroll Island Road. As one faces Eastern Boulevard, the entrance door to the Tavern is at the extreme right front of the building, and a sidewalk runs along the front and left side. The area between Eastern Boulevard and the Tavern and an area on the left side of the building has a crushed stone surface ("a crusher run") and is used for "head-in" parking of automobiles, accommodating in such manner a one car line. As one leaves the Tavern, looking toward Eastern Boulevard, the telephone booth, according to Hicks, "is located on the left hand side, left hand front side of the bar just outside the door . . . sitting on the sidewalk." It is in line with a telephone pole close by Eastern Boulevard in the front parking area. The booth was described by Hicks as "a normal booth that you see outside along the road. It is red and aluminum. . . . It had a metal floor and it's just a normal phone booth." When the Telephone Co. installed the booth it had an electrical contractor connect the necessary electrical lines. An invoice offered by the Telephone Co. showed that on 28 March 1964 the contractor "Installed a 120-volt circuit to and connected same to the lights in outdoor phone booth, as per instructions by Mr. Joseph

Smith",[3] at a total cost of $27.28. Huber said the electrical power for the booth came from an outlet on the outside of the building. It ran "to the corner of the building. The Coca-Cola Company used to have a coca-cola machine sitting there and it's right under the eave of the building." Huber said it was his outlet and it runs to "the panel box", to his "circuit breaker box" in the back room of his bar. The outlet was a double receptacle, "you can put two plugs in it", and it was there before the telephone booth was installed.

On 10 June 1970, about 9:30 A.M., Hicks, a Constable for the District Court of Maryland, went to a trailer park in the Middle River area of Baltimore County to serve an eviction notice. The address in the notice proved to be a vacant lot. He thought the address given was a clerical mistake and decided to telephone the Court to inquire about it. He was familiar with the telephone booth at the Last Chance Tavern and went there to make the call. He got change to deposit in the telephone from Huber. He described what happened. "Well, when I went outside I had the change in my hand and I was reaching down to get two nickles to make the phone call and when I stepped into the phone booth, that quick, I got this terrific jolt and it either blowed me out or I stumbled out of or fell out of the phone booth and landed about ten to 15 feet from the phone booth", and "directly in front" of it. He "honestly and truthfully" did not know how he got to 10 to 15 feet from the booth, but he found himself lying on the ground on his left side, and he did not have his shoes on. John Haag, the bartender at the Last Chance, was reporting for work. Haag helped him up. Hicks testified: "Well, I was shaken. I really didn't know how — it is hard to describe what went through you at the time. It was like a bolt or a hot chill went through you. I just can't find words to describe it. . . . I wasn't in any shape to get up." Haag took him inside the Tavern. He felt "shaken" and noticed that he was "giddy — more dizzy than anything." Haag brought him his shoes. Hicks told Huber, "I don't know

**3.** Joseph Smith was a commercial representative of the Telephone Co., working in "coin sales" to develop the "coin telephone market."

where my change went, it's all over the parking lot." They went out to look for it. In the meantime, Huber had called the Telephone Co., and while Hicks and Huber were outside a Telephone Co. employee drove up in a company truck. Hicks told him what had happened. Huber drove Hicks to Hick's home.[4]

The Telephone Co. employee who arrived on the scene was Edmund Hohman, an installer-repairman. He had been dispatched to the Last Chance on information that "a telephone booth was hot and that somebody had been shocked." He investigated the booth. "We have on our truck what we call a magic wand. It is a B voltage tester and it tells you if there is any foreign voltage or anything, trailers or phone booths, and I used this to test the booth and it lit up, which indicates that there is voltage on it." He went immediately into the Tavern, determined where the circuit breaker was, "and started turning off circuit breakers until I found the right one." The one that supplied current to the booth was in the "on" position, meaning that power was still going to the booth. He turned it off, tagged it so no one would turn it back on, and again checked the booth with the B voltage tester to be sure it was no longer hot. He observed "that the conduit that comes out of the booth had been twisted out of the socket where it actually joined to a joint and by the way it was turned or had been turned and had pulled the electrical wires inside which, I assume, that is what caused it because it had cut into one of the conductors. . . . The conduit is used as a ground on the booth unless there is a ground wire in the conduit also. . . . I found that the conduit was broken. . . . Well, myself, I was wondering why it was broken and I just looked at the booth and you could tell that the booth had been twisted in a way because of the old concrete and the new where the booth had been sitting. I assumed that twisting motion of the booth is what caused the conduit to break." [5]

---

4. Hicks and two medical doctors testified in detail about his physical condition after the incident and the medical treatment he received over a protracted period of time.

5. Hohman said it was part of his duties to maintain the telephone "and

## ISSUES FOR DECISION

### I

It is abundantly clear from argument of counsel and the comments of the court on the motion for a directed verdict and from the charge to the jury that the court permitted the case to go to the jury on the basis that the doctrine of *res ipsa loquitur* applied with regard to negligence by the Telephone Co. Therefore, the issue of first importance is whether the doctrine was properly invoked upon the facts and circumstances shown by the evidence.

## THE LAW

### Res Ipsa Loquitur

Ever since 1863 when a barrel of flour rolled out of a warehouse window in England and injured a person passing on the public street, the thing has been attempting to speak for itself as, during the argument in the case resulting, Baron Pollock suggested, in Latin, it should. *Byrne v. Boadle,* 2 Hurl. & Colt. 722.[6] The attempts have been loud but not clear. Indeed, some eminent Jurists have expressed disenchantment with the entire concept. Former Chief Judge Bond of the Court of Appeals, in what, Singley, J., a present member of that Court, termed "a memorable dissent"[7], said:

> "It adds nothing to the law, has no meaning which is not more clearly expressed for us in English, and brings confusion to our legal discussions. It does not represent a doctrine, is not

---

also the booth, say, if it was vandalized and they break the glass, then I am dispatched and we go out and make it safe. That is, we take all the glass out of it or any other thing and repair it. They pull doors off it and anything else. We clean it up and make the initial repairs on coin telephones." Huber testified that during the years the booth had been on the property there were "quite a few times it had different things wrong with it." He would call the Telephone Co. and they would take care of it. None of the previous troubles involved the electrical circuit. It was "just broken glass and telephone out of order."

6. See Blankenship v. Wagner, 261 Md. 37, 38-39.

7. The dissenting opinion of Bond, C. J., in Potomac Edison Co. v. Johnson, 160 Md. 33, 40-41, so characterized by Singley, J., in Stoskin v. Prensky, 256 Md. 707, 712.

> a legal maxim, and is not a rule. It is merely a
> common argumentative expression of ancient Latin
> brought into the language of the law by men who
> were accustomed to its use in Latin writings. * * *
> It may just as appropriately be used in argument
> on any subject, legal or otherwise. Nowhere does it
> mean more than the colloquial English expression
> that the facts speak for themselves, that facts
> proved naturally afford ground for an inference of
> some fact inquired about, and so amount to some
> proof of it. The inference may be one of certainty,
> as when an excessive interest charge appeared on
> the face of an instrument, or one of more or less
> probability only, as when negligence in the care of a
> barrel of flour was found inferable from its fall out
> of a warehouse."

Despite Chief Judge Bond's views, *res ipsa loquitur*, notable for persistence, if not memorable for clarity, is viable in Maryland today. It is referred to as a doctrine, thought of as a legal maxim and considered as a rule, but not without reservations. As early as 1894 the Court warned: "In all cases of the character we have been considering, the most careful scrutiny should be given to the circumstances attending the accident, and whilst an excellent authority has said that after all the question resolves itself into one of common sense, we would add that it should be of a high order. For it is unquestionably true that the authorities are by no means in accord on the question which arises out of the doctrine of *res ipsa loquitur.*" *Howser v. C. & P. R. R. Co.*, 80 Md. 146, 153. The problems which arose when the barrel rolled out of the warehouse window and into the lives of tort lawyers [8] were not solved by lapse of time. Judge Singley pointed out in *Stoskin v. Prensky*, 256 Md. 707, 713:

> "Perhaps influenced by Chief Judge Bond's
> antipathy, our predecessors have shown great
> restraint in the application of res ipsa loquitur and

---

8. Annot., 2 A.L.R.3d 1335, 1339.

have not extended it beyond the classic factual patterns where it has proved particularly useful. . . ." (Citations omitted).

Three-quarters of a century ago, McSherry, C. J., explained *res ipsa loquitur* in *Benedick v. Potts,* 88 Md. 52, 54-58: "It is a perfectly well-settled principle that to entitle a plaintiff to recover in an action [for damages based on negligence] he must show not only that he has sustained an injury but that the defendant has been guilty of some negligence which produced that particular injury. The negligence alleged and the injury sued for must bear the relation of cause and effect. The concurrence of both and the *nexus* between them must exist to constitute a cause of action. As an injury may occur from causes other than the negligence of the party sued, it is obvious that before a liability on account of that injury can be fastened upon a particular individual, it must be shown, or there must be evidence legally tending to show, that he is responsible for it; that is, that he has been guilty of the negligence that produced or occasioned the injury. In no instance can the bare fact that an injury has happened, of itself and divorced from all the surrounding circumstances, justify the inference that the injury was caused by negligence. It is true that direct proof of negligence is not necessary. Like any other fact, negligence may be established by the proof of circumstances from which its existence may be inferred. But this inference must, after all, be a legitimate inference and not a mere speculation of conjecture. There must be a logical relation and connection between the circumstances proved and the conclusion sought to be adduced from them. This principle is never departed from, and in the very nature of things it never can be disregarded. There are instances in which the circumstances surrounding an occurrence and giving a character to it are held, if unexplained, to indicate the antecedent or coincident existence of negligence as the efficient cause of an injury complained of. These are the instances where the doctrine of *res ipsa loquitur* is applied. This phrase, which literally translated means that 'the thing

speaks for itself,' is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as the cause of that accident; and the doctrine which it embodies, though correct enough in itself, may be said to be applicable to two classes of cases only, viz., first, 'when the relation of carrier and passenger exists and the accident arises from some abnormal condition in the department of actual transportation; second, where the injury arises from some condition or event that is in its very nature so obviously destructive of the safety of person or property and is so tortious in its quality as, in the first instance at least, to permit no inference save that of negligence on the part of the person in the control of the injurious agency.' . . . But it is obvious that in both instances more than the mere isolated, single, segregated fact that an injury has happened must be known. The injury, without more, does not necessarily speak or indicate the *cause* of that injury—it is colorless; but the act that produced the injury being made apparent may, in the instances indicated, furnish the ground for a presumption that negligence set that act in motion. The maxim does not go to the extent of implying that you may from the mere fact of an injury infer what physical act produced that injury; but it means that when the physical act has been shown or is apparent and is not explained by the defendant, the conclusion that negligence superinduced it may be drawn as a legitimate deduction of fact. It permits an inference that the known act which produced the injury was a negligent act, but it does not permit an inference as to what act did produce the injury. Negligence manifestly cannot be predicated on any act until you know what the act is. Until you know *what* did occasion an injury, you cannot say that the defendant was guilty of some negligence that produced that injury. There is, therefore, a difference between inferring as a conclusion of fact *what* it was that did the injury; and inferring from a known or proven act occasioning the injury that there was negligence in the act that did produce the injury. To the first category the maxim *res ipsa loquitur* has no application; it is confined, when

applicable at all, solely to the second. In no case where the thing which occasioned the injury is unknown has it ever been held that the maxim applies; because when the thing which produced the injury is unknown it cannot be said to speak or to indicate the existence of causative negligence. In all the cases, whether the relation of carrier and passenger existed or not, the injury alone furnished no evidence of negligence — something more was required to be shown. . . .

"Whether, therefore, there be a contractual relation between the parties or not, there must be proof of negligence or proof of some circumstances from which negligence may be inferred, before an action can be sustained. And whether you characterize that inference an ordinary presumption of fact, or say of the act that caused the injury, the thing speaks for itself, you assert merely a rebuttable conclusion deduced from known and obvious premises. It follows, of course, that when the *act* that caused the injury is wholly unknown or undisclosed, it is simply and essentially impossible to affirm that there was a negligent act; and neither the doctrine of *res ipsa loquitur* nor any other principle of presumption can be invoked to fasten a liability upon the party charged with having by negligence caused the injury for the infliction of which a suit has been brought."

### Conditions for the Application of Res Ipsa Loquitur

In Maryland there are three elements which a plaintiff must prove to invoke the doctrine of *res ipsa loquitur*. It seems that they had their origin in *Scott v. London Dock Co.*, 3 Hurl. & Colt. 596, decided in the Exchequer Chamber shortly after *Byrne v. Boadle*. *Scott* was the case cited in *Weilbacher v. Putts Co.*, 123 Md. 249, 265-266, as the one "most frequently referred to in this State as containing the true statement of the rule . . ." As quoted in *Weilbacher*, it was said in *Scott:* "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or its servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care,

it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." [9] See *Chesapeake Iron Works of Baltimore City v. Hochschild, Kohn & Company,* 119 Md. 303, 309; *Walter v. Balto. Electric Co.,* 109 Md. 513, 526; *Decola v. Cowan,* 102 Md. 551, 554-555; *Howser v. C. & P. R. R. Co., supra,* at 149. W. Prosser, *Torts* § 39, p. 214 (4th ed. 1971) suggests that conditions usually stated in America for the application of the principle of *res ipsa loquitur* were derived originally from the first edition of Wigmore on Evidence, which appeared in 1905. In 4 Wigmore, *Evidence* § 2509, p. 3556-3557 (1st ed. 1905), a reason for the acceptance of the doctrine was given: "With the vast increase, in modern times, of the use of powerful machinery, harmless in normal operation, but capable of serious human injury if not constructed or managed in a specific mode, the question has come to be increasingly common whether the fact of the occurrence of an injury (unfortunately now termed 'accident' by inveterate misuse) is to be regarded as raising a presumption of culpability on the part of the owner or manager of the apparatus. *'Res ipsa loquitur'* is the phrase appealed to as symbolizing the argument for such a presumption." Noting that a rule of that sort had been conceded to exist in England for a generation, Wigmore said that the presumption had spread rapidly in the United States, "although with much looseness of phrase and indefiniteness of scope. . . . What its final accepted shape will be can hardly be predicted." He warned: "But the following considerations ought to limit it: (1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2) Both inspection and user must have been at the time of the injury in the control of the party charged; (3) The injurious occurrence or condition must have happened irrespective of any voluntary

---

9. Three English publications, appearing in 1865, report the opinion as rendered by Erle, C. J. in slightly different language but the same in substance. See The New Reports, v. 5, p. 421; The Weekly Reporter, v. 13, p. 411; The Law Journal Reports, Exchequer, v. 43, p. 222.

action at the time by the party injured." The language used to spell out these considerations was not changed in subsequent editions of Wigmore's Treatise. They were paraphrased, however, by Prosser, *supra,* § 39, p. 214:

"(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
(2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;
(3) it must not have been due to any voluntary action or contribution on the part of the plaintiff."

Considerations for the application of the doctrine were generally discussed in *Potts v. Armour & Co.,* 183 Md. 483, but not specifically enumerated. They were detailed in *Williams v. McCrory Stores Corp.,* 203 Md. 598, 601-602, in language paralleling that of Wigmore, and citing 9 Wigmore, *Evidence,* § 2509 (3d ed.) as authority:

"The rule of *res ipsa loquitur* is limited by the following considerations: (1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection or user; (2) Both inspection and user must have been at the time of the injury in the control of the party charged; and (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured."

In *Proctor Electric Co. v. Zink,* 217 Md. 22, the Court delineated the elements in language similar to that used by Prosser. It said, at 29, that an inference that an injury was due to the defendant's negligence was allowable when the plaintiff proves that he has been injured "(a) by a casualty of a sort which usually does not occur in the absence of negligence, (b) by an instrumentality within the defendant's exclusive control, (c) under circumstances indicating that it

was not caused by any voluntary act or neglect of the plaintiff." This identical language was used in *Munzert v. American Stores,* 232 Md. 97, 104. But in *Smith v. Kelly,* 246 Md. 640, 643-644, the Court reverted to the words of Wigmore followed in *Williams.* Then in *Leikach v. Royal Crown,* 261 Md. 541, 547-548, the Court gave its version of what it had set out in *Munzert* as "the three criteria necessary for successful reliance on the doctrine of res ipsa loquitur":

> "1. A casualty of a sort which usually does not occur in the absence of negligence.
> 2. Caused by an instrumentality within the defendant's exclusive control.
> 3. Under circumstances indicating that the casualty did not result from the act or omission of the plaintiff."

It used this identical language in *Ramsey v. D. P. A. Associates,* 265 Md. 319, 325, and in *Giant Food, Inc. v. Washington Coca-Cola Bottling Co., Inc.,* 273 Md. 592, 597. *See Harford v. Lloyd E. Mitchell, Inc.,* 269 Md. 64, 71. It seems that the Court has settled on this language as the means of expressing the three elements necessary for the application of *res ipsa loquitur* in Maryland. We observe that although the various ways of setting out the elements over the years differed in language and form, they were in accord in substance.

At first glance it would appear that first and third criteria necessary for successful reliance on the doctrine of *res ipsa loquitur* were significantly changed in *Blankenship v. Wagner,* 261 Md. 37. Finan, J., speaking for the Court, said, at 42:

> "In order to invoke the doctrine of *res ipsa loquitur* in Maryland certain circumstances must be shown by the evidence. First, it must appear that the accident was of such a nature that it would not ordinarily occur without the *defendant's* negligence. *Williams v. McCrory Stores Corp.,* 203

Md. 598, 601, 102 A. 2d 253 (1954); *Cf. Short v. Wells,* 249 Md. 491, 496, 240 A. 2d 224 (1968). Second, the plaintiff must demonstrate that the apparatus or instrument which caused the injury was in the *defendant's exclusive control. Smith v. Kelly,* 246 Md. 640, 644, 229 A. 2d 79 (1967). The third element is that it must appear from the evidence that *no action on the part of* the plaintiff *or a third party or other intervening force might just as well have caused the injury. Johnson v. Jackson,* 245 Md. 589, 593, 226 A. 2d 883 (1967); *Joffre v. Canada Dry,* 222 Md. 1, 9, 158 A. 2d 631 (1960); *Hickory Transfer Co. v. Nezbed,* [202 Md. 253] at 263. Cf. *Restatement (Second) of Torts,* § 328D (1965)." (Emphasis added).

Judge Finan was careful to point out, however, that "[o]ur statement of the law is in accord with the prior decisions of this Court. . . ." Id. The prior decisions of the Court of Appeals did not limit the first criterion to a *defendant's* negligence, but spoke in terms of the event not occurring in the absence of *someone's* negligence.[10] The third criterion as enunciated by Judge Finan followed the former statements that it must appear that the casualty was not due to any voluntary action or contribution on the part of the plaintiff, but added the additional condition that it must appear from the evidence also that no action on the part of "a third party or other intervening force might just as well have caused the injury." *Johnson v. Jackson, supra,* cited in support of this statement, was a case where the plaintiff proved "too much and too little" because his evidence was sufficient to exclude *res ipsa loquitur* without being sufficient to establish negligence. 245 Md. at 595-596. To like effect was *Hickory*

---

10. Williams v. McCrory, supra, cited as authority for the first criterion employed, as we have indicated, the language of Wigmore. In Short v. Wells, supra, cited by Finan, J. to "compare" with the statement of the first criterion, *res ipsa loquitur* was not relied upon. Circumstantial acts of negligence were introduced, and the plaintiff also introduced evidence of nonnegligence or of an independent intervening cause. But there was, in addition, direct evidence of negligence, making negligence *vel non* a question of fact for the jury. 249 Md. at 496-497.

*Transfer Co. v. Nezbed,* 202 Md. 253, 263. We think it patent
that the enlarged dimension of the third criterion as phrased
by Judge Finan merely emphasized the "exclusive control"
criterion of the second element. This is manifest from the
supporting citation of *Joffre v. Canada Dry, supra,*
concerned primarily with the element of control. 222 Md. at
8-9. The "*Cf.*" citation given by Judge Finan as authority for
the third criterion as set out by him, is *Restatement
(Second) of Torts,* § 328D (1955). But the *Restatement* lumps
together in its second criterion the second and third criteria
as stated in Maryland.[11] We conclude that the Court of
Appeals did not intend that the three criteria as set out in
*Blankenship* change in any way the criteria as previously
enunciated. We observe that only two months after the
decision in *Blankenship,* the Court filed the opinion in
*Leikach v. Royal Crown, supra,* which set out the three
criteria as they appeared in *Munzert v. American Stores,
supra,* with no reference to *Blankenship.* Nor has the Court
since used the language of *Blankenship* in stating the
criteria.

## The Element of Exclusive Control

It is the second criterion, that the plaintiff must prove
that the casualty was caused by an instrumentality within
the defendant's exclusive control, which concerns us in the
case *sub judice.* The evidence adduced was legally sufficient
to show that the casualty was of a sort which usually does
not occur in the absence of negligence (1st criterion) and that
the casualty occurred under circumstances indicating that it
did not result from the act or omission of the plaintiff (3rd
criterion).[12] From the time of the first recognition of *res ipsa
loquitur* by the Court of Appeals of this State to its latest
opinion concerned with that doctrine, it has invoked and
adhered to the element of exclusive control, consistently
holding that *res ipsa loquitur* does not apply unless it is

---

**11.** The Restatement gives us the third criterion that the indicated
negligence is within the scope of the defendant's duty to the plaintiff. §
328D (1) (c). See footnote 18. *infra.*

**12.** It is manifest that the evidence did not show any negligence on the

shown that the casualty was caused by an instrumentality within the defendant's exclusive control.[13] It has stated the criterion in various ways. "Again, the rule does not apply if the defendant is not in exclusive control or management of the injurious agency", *Frenkil v. Johnson*, 175 Md. at 605. "In order to establish this doctrine of *res ipsa loquitur*, one of the essential elements required is that the thing which is the proximate and natural cause of the injury is wholly in the possession and control of the one party or the other. The independent neglect of another as the efficient and proximate cause of the injury must be excluded." *Bohlen v. Glenn L. Martin Co.*, 193 Md. at 460. "An inference of negligence cannot be drawn unless 'the thing which produced the injury was under the management and control of the defendant'. . . ." *Lee v. Housing Auth. of Baltimore*, 203 Md. at 462. *"Res ipsa loquitur* does not apply where the defendant does not have control of the instrumentality." *Dorsey v. General Elevator*, 241 Md. at 107. "The doctrine of *res ipsa loquitur* is not available . . . since the machine was not in the sole control of [defendants]." *Smith v. Kelly*, 246 Md. at 644. "Insofar as the negligence aspect of this suit is concerned the doctrine of *res ipsa loquitur* could not apply since the apparatus causing the injury was not in the control of defendant at the time of the injury." *Hacker v. Shofer*, 251 Md. at 676. "Res ipsa loquitur situations permit an inference or presumption of negligence and of proximate causation. This relaxation of the normal rules of proof is thought to be

part of Hicks which contributed to the occurrence. The court instructed the jury without exception being taken: "There is no evidence in this case legally sufficient from which you could infer that [Hicks] was guilty of any contributory negligence barring his recovery."

13. See, for example, Decola v. Cowan, *supra;* Strasburger v. Vogel, 103 Md. 85; Stewart & Co. v. Harman, 108 Md. 446; State v. Electric Co., 162 Md. 84; Frenkil v. Johnson, 175 Md. 592; Bohlen v. Glenn L. Martin Co., 193 Md. 454; Walker v. Vail, 203 Md. 321; Lee v. Housing Auth. of Baltimore, 203 Md. 453; Williams v. McCrory Stores Corp., *supra;* Proctor Electric Co. v. Zink, *supra;* Joffre v. Canada Dry, Inc., *supra;* Leidenfrost v. Atl. Masonry, 235 Md. 244; Dorsey v. General Elevator, 241 Md. 99; Smith v. Kelly, *supra;* Hacker v. Shofer, 251 Md. 672; Stoskin v. Prensky, 256 Md. 707; Peterson v. Underwood, 258 Md. 9; Ramsey v. D.P.A. Associates, *supra;* Harford v. Lloyd E. Mitchell, Inc., *supra;* Giant Food, Inc. v. Washington Coca-Cola Bottling Company, Inc., *supra.*

justified because the instrumentality causing injury is in the exclusive control of the defendant, and it is assumed he is in the best position to explain how the accident happened." *Peterson v. Underwood,* 258 Md. at 19. In *Stoskin v. Prensky, supra,* the Court put it differently, declaring flatly, "[W]e do intend to hold that [res ipsa loquitur] cannot be availed of in a case like this one where it is by no means clear that the only fault was the defendant's." 256 Md. at 715. And in the circumstances of *Giant Food, Inc. v. Washington Coca-Cola Bottling Company, Inc., supra,* the Court declined "to extend the doctrine of *res ipsa loquitur* to a case against multiple defendants absent a showing that their liability was joint or that they were in joint or exclusive control of the injury producing factor; . . . ." 273 Md. at 602.

What was meant by "exclusive" was discussed in *Frenkil v. Johnson, supra,* at 605-606:

> "It should be noted that the term 'exclusive,' when used to define the quantity of the possession, control, or management by the defendant of the injurious agency, is not employed in the sense that the possession, control, or management must be several, so that, for the inference of defendant's negligence to be operative, the defendant in possession, control, or management must be singular and never plural. The meaning of the term as here employed is that the possession, control, or management must be exclusive as against all who do not have a concurrent joint possession, control, or management in fact, either as joint actors, possessors, or users, in respect of the injurious agency; or by way of representation or identification, as, generally, principal and agent, master and servant, members of a co-partnership, and corporation and employees. *Cooley on Torts* (3rd Ed.) 252, 262, 223, 242 *et seq.* See *Cox v. Forrest,* 60 Md. 74, 80. The signification of the term 'exclusive' is that the possession, control, or

management by the defendant of the injurious agency must not be shared with any other who is not concurrently and jointly in possession, control, or management of the injurious agency, so as to be concurrently and jointly liable in tort for the acts and things done in respect of such injurious agency.

"Where, however, the probability that the injury is due to negligence is materially greater than that it is due to any other cause, and it appears that the defendant exclusively managed or controlled, and was responsible for the management or control of, the thing or condition which worked the injury, and the surrounding circumstances, and that the injury was one which, in accordance with the common knowledge of mankind and its experience in similar circumstances, would not ordinarily happen, unless because of some negligence on the part of the person having such control and management, the proper and natural inference forthwith arising is that the injury complained of was caused by the defendant's negligence, and the doctrine applies."

In *Walker v. Vail, supra*, at 327-328, the Court noted that "control is not the same thing as a contractor's obligation to render further services." So in that case, where the casualty could have been caused by the absence of a cotter key and there was no explanation as to when, how or through whom the condition was created, the doctrine did not apply. "The cotter key could have been negligently omitted at the time of the installation, or it could have been installed negligently, or it could have been removed by third persons after a proper installation. The jury had no basis in the testimony for a choice based on a rational inference. It could reach a conclusion only by speculation." Id., at 328. It has been held that the inference is not permissible "where the lapse of time and the opportunity for interference by others weakens the probability that the injury is attributable to the defendant's act or omission." *Lee v. Housing Auth. of Baltimore, supra*, at 462. The Court observed that the

control retained by the defendant was a qualified one, "and there was at least the possibility of access by others." Id., at 463.

Another facet of the "exclusive control" criterion is that "when an appliance or machine not obviously dangerous, has been in daily use for a long time, and has uniformly proved adequate and safe, its use may be continued without imputation of negligence." *Stewart & Co. v. Harman,* 108 Md. 446, 455. So "[p]assage of time between the act of negligence and the subsequent injury is a factor to be considered, for it increases the possibility that there was an intervening independent act of a third party which would make the doctrine inapplicable. . . . Of course the plaintiff must show the condition of the instrumentality has not changed or been altered in the interim." *Leidenfrost v. Atl. Masonry, supra,* at 250. Therefore, it has been held that the doctrine is not applicable "because of the opportunity for intervening forces to have contributed to the machine's malfunction through no fault of [the defendants]." *Smith v. Kelly, supra,* at 644. "However, evidence of complete control is not required. It may be established by evidence sufficient to warrant an inference of its existence, and circumstantial evidence may suffice. The plaintiff is not required in his proof to exclude remotely possible causes and reduce the question of control to a scientific certainty." *Leidenfrost,* at 250.

We discuss briefly two other aspects of the multi-faceted doctrine of *res ipsa loquitur,* the duty to inspect and the duty to maintain. As for inspection, even if there were a duty to inspect the instrumentality involved in the casualty, and even if the evidence were sufficient to show that the defendant failed to make proper inspections, negligence is still not established unless it is shown that proper inspection would have disclosed the defect causing the casualty. "The evidence must show that the inspection would or should have revealed a defect." *Smith v. Kelly, supra,* at 644. As for maintenance, the Court in *Smith,* at 645, quoted with approval *Buria v. Rosedale Engineering Corp.,* 7 A.D.2d 486,

184 N.Y.S.2d 395, 397 (1959) *motion for leave to appeal denied,* 7 N.Y.2d 706, 162 N.E.2d 753 (1959):

> "The duty to properly maintain does not in and of itself fasten liability in the event of an accident due to a defect. It merely fixes the obligation the negligent performance of which gives rise to liability. It does not do away with the necessity for proving negligence. Where do we find negligence if notice of the defect was not brought home to the defendants or if in the circumstances the defendants could not have been expected to know of such defect? Notice in this case is particularly essential as a prerequisite to liability because the machine was in constant use by the tenants and subject to the possibility of abuse at any time. To hold otherwise would be to charge the defendants with the liability of an insurer — a liability which cannot arise merely from an obligation of proper maintenance."

## The Burden of Proof

The basic rule is that the burden of proof is on the party asserting the affirmative of the issue, as determined by the pleadings and the nature of the case. *Brehm v. Lorenz,* 206 Md. 500, 506. Thus, the plaintiff has the burden of proving each of the elements of a cause of action for negligence. This is explained in 2 F. Harper & F. James, *The Law of Torts* § 19.1, pp. 1062-1063 (1954): "The term burden of proof is used in two senses. The first is often called the burden of going forward with evidence and it means that if the plaintiff does not, in the first instance, introduce evidence on each element which is sufficient to warrant a finding in his favor, he will lose his case at the hands of the court (by nonsuit, directed verdict, or the like). If the plaintiff has introduced sufficient evidence (before he rests his case) he has made out a prima facie case and is entitled to go to the jury. His burden of going forward is met and drops out of the case. Thus the burden of going forward with evidence is applied

always by the court, never by the jury. Burden of proof in the other sense does not come into play until a case is finally submitted to the jury (or court as trier of facts) for determination. In that process the trier may find the evidence on any given issue in equipoise — or his mind may be in equipoise as to the evaluation of conduct as negligent or careful. In that event, he who has the burden of proof, in this sense of the risk of nonpersuasion, must fail. This burden is applied by the trier of facts, and in a jury case the charge must define this burden and tell the jury how to apply it. In civil cases generally the plaintiff is entitled to prevail if the jury finds that *more probably than not* the facts are as he alleges. This does not mean all the facts (e.g., every item of negligence) but so many of them as constitute the essential elements of his cause of action as defined by the court in its charge." See 9 Wigmore, *Evidence* §§ 2485, 2487 (3rd ed. 1940). Evidence is direct and circumstantial. Circumstantial evidence typically involves proof of fact A (which is not itself a fact in issue) as the basis of an inference of the existance of fact B (which is in issue). Harper & James, *supra,* § 19.2, pp. 1063-1064. If a plaintiff is relying on circumstantial evidence to establish any of the elements of his cause of action, the question may involve the legitimacy of the inferences which he claims should be drawn. So far as defendant's negligence is concerned, the inferences must warrant a finding that the defendant's conduct was such that a jury would be entitled to characterize it as negligent. *Id.,* § 19.4, p. 1068. The test for the legitimacy of an inference is often expressed in this way: "where from the facts most favorable to the plaintiff the nonexistence of the fact to be inferred is just as probable as its existence (or more probable than its existence), the conclusion that it exists is a matter of speculation, surmise, and conjecture, and a jury will not be permitted to draw it." *Id.* This test is directed to the court's function and not to the jury's. "The court must determine whether the existence of fact A (which has been testified to) is more probably than not, *as a generalization,* attended by the coexistence of fact

B. If the court makes the initial determination in favor of the legitimacy of the inference, the issue goes to the jury to determine whether upon the preponderance of the evidence [14] *in this case* they find (a) that fact A probably *did exist* and, if so, (b) whether fact B probably *did exist* (again, in this case)." *Id.*, pp. 1068-1069. This view was adopted by the Court of Appeals in *Short v. Wells,* 249 Md. 491, 495-496. The burden of proof, which concerns the ultimate burden of producing a preponderance of the evidence, is to be distinguished from the burden of going forward with evidence, at a particular point in the proceeding, which may shift from one party to the other according to the proof introduced.

In an action for negligence the plaintiff has the burden of proving: (a) facts which give rise to a legal duty on the part of the defendant to conform to the standard of conduct established by law for the protection of the plaintiff; (b) failure of the defendant to conform to the standard of conduct; (c) that such failure is a legal cause of the harm suffered by the plaintiff; and (d) that the plaintiff has in fact suffered harm of a kind legally compensable by damages. Restatement (Second) of Torts, § 328A (1965).[15] Thus, the

---

14. The preponderance of the evidence means "that the weight of the evidence, tested by the number and character of the witnesses who give it, the inherent probability of the truth of their testimony, their interest in the issue, their bias, their demeanor on the witness stand, and the manner in which they testified, inclines more heavily to establish the existence or non-existence of facts in respect to which it is offered, than evidence to the contrary." Insurance Comm'r v. Nat'l Bureau, 248 Md. 292, 305-306, quoting from France v. Safe Deposit & Trust Co.. 176 Md. 306, 311.

15. The court determines: (a) whether the evidence as to the facts makes an issue upon which the jury may reasonably find the existence or non-existence of such facts; (b) whether such facts give rise to any legal duty on the part of the defendant; (c) the standard of conduct required of the defendant by his legal duty; (d) whether the defendant has conformed to that standard, in any case in which the jury may not reasonably come to a different conclusion; (e) The applicability of any rules of law determining whether the defendant's conduct is a legal cause of harm to the plaintiff; and (f) whether the harm claimed to be suffered is legally compensable. *Id.,* § 328B.

It is the function of the jury to determine, in any case in which different conclusions may be reached on the issue: (a) the facts; (b) whether the defendant has conformed to the standard of conduct required by the law; (c) whether the defendant's conduct is a legal cause of the harm to the plaintiff; and (d) the amount of compensation for legally compensable harm. *Id.,* § 328C.

plaintiff's burden of proof requires him to produce evidence which will permit the conclusion that it is more likely than not that his injuries were caused by the defendant's negligence. The doctrine of *res ipsa loquitur* provides a way for him to do this. It is merely one kind of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it. *Id.*, § 328D, comment b.[16] As was early suggested by the Court of Appeals, the doctrine serves to supply an inference. *Benedick v. Potts, supra*, at 54-58. We think this is now the rule in this State. Why we think so in the light of language in some subsequent opinions of the Court of Appeals requires explanation.

It has been noted that the Maryland decisions concerning *res ipsa loquitur* had "not dealt with the maxim with any great clarity." Farinholt, "Res Ispa Loquitur", 10 Md.L.R. 337 (1949). Problems surrounding the application of the doctrine [17] have arisen because its substantive and procedural aspects have been "confused and intermingled." W. Prosser, *Torts* § 39, p. 213 (4th ed. 1971). The substantive effect of the doctrine is that it provides circumstantial evidence of negligence. There are, however, three interpretations regarding its procedural effect in a negligence action. They are discussed by Farinholt *supra* at 341-342. The first is that *res ipsa* provides a "permissible inference" by furnishing some evidence of negligence. This assures the plaintiff of having his case go to the jury unless the defendant offers sufficient rebutting evidence to

---

**16.** The Court put it thus in Short v. Wells, *supra*, at 496:

"In certain situations it has been held that the mere happening of an accident is evidence of negligence because accidents ordinarily do not happen in the absence of a breach of duty and this in and of itself constitutes enough circumstantial evidence to permit an inference to be drawn by the jury in a given case. This is the doctrine of *res ipsa loquitur.*"

**17.** Despite the views of Bond, C. J., see note 7 *supra*, it is clear that *res ipsa loquitur* is now considered a doctrine in this jurisdiction. See Blankenship v. Wagner, *supra*.

overturn the plaintiff's case. By the second "a presumption of negligence" arises. This casts the burden of going forward with the evidence on the defendant. If the defendant comes forward with some explanation or rebutting evidence, the case goes to the jury, but if he fails to do so, the plaintiff is entitled to a directed verdict. The third is that where *res ipsa* applies, it shifts the burden of proof to the defendant, requiring him to show by a preponderance of the evidence that he was not guilty of negligence. Maryland has consistently renounced the third interpretation, expressly holding that the application of the doctrine does not shift the burden of proof. See *Potts v. Armour & Co., supra,* at 486. The position with respect to the first and second interpretations, however, has been ambivalent. An analysis of the early cases in this jurisdiction indicates that application of the doctrine was deemed to create a true rebuttable presumption of law which cast upon the defendant a burden of going forward with the evidence. Thomsen, *Res Ipsa Loquitur,* 3 Md.L.R. 285, 298 (1939). Later cases contain language which had the effect of creating only a permissible inference of negligence. Some of them, however, also indicated that, although the doctrine provided a permissible inference, the defendant had the burden of going forward with the evidence as if there were a rebuttable presumption. The confusion apparently arose from considering "inference" and "presumption" to be synonymous and using them interchangeably. *See Peterson v. Underwood, supra,* at 19. Farinholt, *supra,* at 345-346, concluded that "the present view as deduced from the most recent cases seems clearly to uphold the interpretation which gives effect to the rise of merely a permissible inference under the rule. . . Thus the Court of Appeals has discarded its prior inconsistencies and clearly approved the view taken in the majority of jurisdictions." The view taken in the majority of jurisdictions is expressed by Prosser, *supra,* § 40 at pp. 228-229:

> "In the ordinary case, absent special circumstances or some special relation between the parties, the great majority of the American courts

> regard res ipsa loquitur as nothing more than one form of circumstantial evidence. . . This means that the inference of negligence to be drawn from the circumstances is left to the jury. They are permitted, but not compelled to find it. The plaintiff escapes a nonsuit, or a dismissal of his case, since there is sufficient evidence to go to the jury; but the burden of proof is not shifted to the defendant's shoulders, nor is any burden of introducing evidence cast upon him, except in the very limited sense that if he fails to do so, he runs the risk that the jury may, and very likely will, find against him."

This is also the conclusion of Harper & James, *supra*. They state in § 19.11, p. 1100:

> "Even in this sphere of controversy there has emerged a rule which represents the clear weight of American authority. This rule reflects the analysis which sees in res ipsa loquitur only an aspect of general principles of inference from circumstantial evidence. This is the view often called the 'permissible inference' theory. The most frequently quoted statement of the rule was made by the United States Supreme Court in *Sweeney v. Erving* [228 U. S. 233, 240]. . . ."

The Restatement, *supra*, is in accord. Comment m to § 328D observes: "In the ordinary case the great majority of courts now treat res ipsa loquitur as creating nothing more than a permissible inference, which the jury may draw or refuse to draw, unless the facts are so compelling that no reasonable man could reject it." In *Potts v. Armour & Co., supra*, at 487, the Court of Appeals adopted almost word for word the language of *Sweeney*:

> "*Res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence

where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict."

Although it appears clear that Maryland has adopted the permissible inference interpretation of *res ipsa*, there is still a certain inconsistency. *Potts, Munzert,* and *Blankenship* each use the language of *Sweeney* but then indicate that the burden of going forward with the evidence is cast upon the defendant as it would be under the presumption interpretation. But *Munzert,* relied on in *Blankenship,* after voicing that the defendant had the duty of going forward with the evidence to explain or rebut the inference that he failed to use due care, used language completely foreign to the presumption interpretation:

"Since the doctrine of *res ipsa loquitur* means that the facts of the case warrant, but do not compel, an inference of negligence; that the facts furnish circumstantial evidence of negligence (where direct evidence of it is lacking) which is to be weighed, but is not necessarily to be accepted as sufficient; and *that the facts call for explanation or rebuttal, but do not necessarily require either,* the question of negligence is usually one of fact for the jury to decide and not one of law. . . In the case at bar, it seems clear that *the plaintiff was not entitled to a directed verdict* as to the primary negligence of the defendant *even though no explanatory or rebuttal evidence* (other than that of the clerk to the effect that he had stacked the cases properly) *was produced by the defendant."* 232 Md. at 103-104. (emphasis added)

We believe that the true interpretation of *res ipsa loquitur* in Maryland, despite apparent inconsistencies in discussing it, is that espoused by the great majority of American courts. The doctrine merely provides a permissible inference

of negligence. This means that the inference of negligence to be drawn from the circumstances is left to the jury. They are permitted, but not compelled to find it. As for the plaintiff, the doctrine furnishes sufficient evidence to go to the trier of fact. As for the defendant, the burden of proof is not shifted to him, nor is any burden of introducing evidence cast upon him, except in the very limited sense that if he fails to do so, he runs the risk that the trier of fact may, and very likely will, find against him. In other words, he has no duty to go forward with the evidence, but by not doing so he runs the risk of non-persuasion. Of course, there will be occasional cases where the inference of negligence is so clear that no reasonable man could fail to accept it. In such cases, if the defendant offers no explanation, a verdict should be directed for the plaintiff. "In other words", Prosser says, § 40 at p. 230, "the procedural effect of a res ipsa case is a matter for the strength of the inference drawn, which will vary with the circumstances of the case."

As we have indicated, in order to invoke the doctrine of *res ipsa loquitur*, the plaintiff must prove the three elements necessary for its application. The test for this proof, as it is for proof of negligence generally, is a preponderance of the evidence. Prosser, *supra*, § 39, p. 218. In the light of language used in some opinions in this jurisdiction, however, proof with regard to the second element — the casualty was caused by an instrumentality within the defendant's exclusive control — requires further discussion. Prosser says that in any case where it is clear that it is at least equally probable that the negligence was that of another, the court must direct the jury that the plaintiff has not proved his case. *Id.* Harper & James, *supra*, § 19.7, pp. 1086-1087, find that "[t]he requirement [exclusive control] as it is generally applied is more accurately stated as one that the evidence must afford a rational basis for concluding that the cause of the accident was probably 'such that the defendant would be responsible for any negligence connected with it.' That does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater possibility lies at the defendant's door." Harper & James continue:

"The fallacy of the 'exclusive control' test is seen in many situations where the doctrine [of res ipsa loquitur] is unhesitatingly applied despite absence of 'control.' . . . Where a fuse misfires, or a bottle explodes, the inference of negligence may still point to the manufacturer or bottler if the proof eliminates the probability of other causes, even though the mishap occurs at a time and place remote from defendant's control.

"The requirement as restated may still be a pretty serious burden in some situations. In the case of the misfiring fuse or the exploding bottle, for instance, if the article has passed through many hands the plaintiff must (by direct or circumstantial evidence) lay the basis for eliminating *each one* of them as a likely cause of the defect, before he can recover against the manufacturer."

Restatement (Second) of Torts, dealing with *res ipsa loquitur*, takes a similar position. Comment f to § 328D [18] observes:

*"Eliminating other responsible causes.* It is never enough for the plaintiff to prove that he was injured by the negligence of some person

---

**18.** Section 328D of the Restatement, entitled *"Res Ipsa Loquitur"*, reads:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached."

unidentified. It is still necessary to make the negligence point to the defendant. On this too the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where there is no doubt that it is at least equally probable that the negligence was that of a third person, the court must direct the jury that the plaintiff has not proved his case. Again, however, the plaintiff is not required to exclude all other possible conclusions beyond a reasonable doubt, and it is enough that he makes out a case from which the jury may reasonably conclude that the negligence was, more probably than not, that of the defendant."

Comment e to the section states:

"The plaintiff's burden of proof (see § 328 A) requires him to produce evidence which will permit the conclusion that it is more likely than not that his injuries were caused by the defendant's negligence. Where the probabilities are at best evenly divided between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof. The plaintiff need not, however, conclusively exclude all other possible explanations, and so prove his case beyond a reasonable doubt. Such proof is not required in civil actions, in contrast to criminal cases. It is enough that the facts proved reasonably permit the conclusion that negligence is the more probable explanation. This conclusion is not for the court to draw, or to refuse to draw, in any case where either conclusion is reasonable; and even though the court would not itself find negligence, it must still leave the question to the jury if reasonable men might do so."

Comment g to the same section adds:

"The plaintiff may sustain this burden of proof [by] . . . a showing that the defendant is responsible for all reasonably probable causes to which the event can be attributed. Usually this is done by showing that a specific instrumentality which has caused the event, or all reasonably probable causes, were under the exclusive control of the defendant. Thus the responsibility of the defendant is proved by eliminating that of any other person.

"It is not, however, necessary to the inference that the defendant have such exclusive control; and exclusive control is merely one way of proving his responsibility. . . . It may be enough that the defendant was formerly in control, at the time of the probable negligence, as in the case of a beverage bottler whose product poisons the consumer, when there is sufficient evidence to eliminate the responsibility of intermediate dealers." [19]

What this all adds up to, we think, is that the plaintiff must prove the exclusive control element by a preponderance of the evidence. What gives pause, at first glance, is language used in other opinions of the Court of Appeals. In *State v. Electric Co., supra,* at 91, the Court said: "And if, by the evidence of the plaintiff, it was disclosed that the injury complained of *might have been caused* either by the defendant's negligence or by the act of another for which the defendant was not responsible, then the doctrine would not apply." (emphasis added). This language was quoted and applied in *Klan v. Security Motors,* 164 Md. 198, 200, and *Coastal Tank Lines v. Carroll,* 205 Md. 137, 144. In *Williams v. McCrory Stores Corp., supra,* at 604, the Court declared: "The rule of *res ipsa loquitur* applies *only when the facts established are so clear and certain* that the natural and

---

19. The statements of Harper & James and comments e and g to § 328D of the Restatement are quoted with approval in Leikach v. Royal Crown, *supra,* at 548-550.

proper inference arises from them that the accident was caused by the negligence of the defendant." (emphasis added). Practically identical language was used in *Brehm v. Lorenz, supra,* at 508: "But the rule of *res ipsa loquitur* is not applied *except where the facts established are so clear and certain* that the inference naturally arises from them that the accident was caused by the negligence of the defendant." (emphasis added). In *Smith v. Kelly, supra,* at 644, the Court held that *res ipsa loquitur* was not available "because of *the opportunity* for intervening forces to have contributed to the machine's malfunction through no fault of appellees." And as we have indicated, the Court in *Stoskin v. Prensky, supra,* at 715, asserted flatly: "[W]e do intend to hold that [*res ipsa loquitur*] cannot be availed of in a case like this one where it is *by no means clear* that the only fault was the defendant's." (emphasis added). In *Giant Food, Inc. v. Washington Coca-Cola Bottling Company, Inc., supra,* the Court reverted to the "greater likelihood" phrase, stating that proof is required that "there is a greater likelihood that injury was caused by the defendant's negligence than by some other cause." [20] We have analyzed each case, however, in the light of its circumstances as may be gleaned from the opinion. We conclude that when the Court talked about the facts established being "clear and certain", "the opportunity for intervening forces to have contributed", the facts being "by no means clear", and there being "a greater likelihood", it contemplated no more than that the facts with respect to the element of exclusive control were to be shown by a preponderance of the evidence.

## THE DECISION

We hold that the doctrine of *res ipsa loquitur* was not applicable upon the facts and circumstances here shown. The evidence tended to show that the casualty occurred

---

**20.** The opinion in Giant Food is careful to limit its discussion to "exploding bottle cases" and Leikach v. Royal Crown, which is given as authority, was also such a case. But we do not think the Court intended to have a test for exploding bottle cases different from other cases applying *res ipsa loquitur.*

because the booth became electrically charged. It became "hot" because it had been moved from its proper position and this movement twisted out of its socket the conduit through which the electric current entered the booth, so that the charged wire was no longer insulated from the booth. But for *res ipsa loquitur* to apply, Hicks had the burden of proving by a preponderance of the evidence the three elements required for its application. He did not so establish the second element, that the booth was in the exclusive control of the Telephone Co.

The booth was in a public place, open to public use and readily accessible to intervening forces — users, passers-by, vehicles in the parking area. It was in the temporary use and control of persons other than the owner as fully as were the stools in *Williams v. McCrory Stores Corp., supra,* as were the glass doors in *Ramsey v. D. P. A. Associates, supra,* as was the washing machine in *Smith v. Kelly, supra,* as were the electrical lines in *State v. Electric Co., supra,* in each of which the doctrine was held not to apply because the instrumentality was not under such exclusive control of the owner as to permit invocation of the *res ipsa* doctrine. Nor do we see such evidence as was found sufficient in *Leikach v. Royal Crown, supra,* and *Giant Food, Inc. v. Washington Coca-Cola Bottling Company, Inc., supra,* to show "a greater likelihood" that the retailer's negligence than some other cause was the reason why a bottle exploded. There is a substantial difference between a telephone booth fixed in position and used for some six years without harm and a bottle placed on a shelf in a store by a retailer for the purpose of sale. Hicks attempts to distinguish the "public use" cases:

> "The rule laid down by this series of cases is clear. Where the instrumentality which causes the injury is constantly subject to the uses and abuses of the public, the doctrine will not be applied. Thus, for example, if Hicks had been injured by collapse of the folding door on the phone booth, he could not recover. However, the electrical lines which run

into the top of the phone booth are not used by the public. Moreover, their location, and the fact that they carry electricity both suggest that they would not be tampered with."

Although the conduit carrying the electric wires was on top of the booth, it was not immune to damage caused by public usage, negligence or vandalism of the booth itself and the shifting of the booth, according to the evidence, could have caused the defect which resulted in the casualty. The booth was subject to the "uses and abuses of the public" continuously, twenty-four hours a day.

The short of it is that Hicks did not meet his burden of proving by a preponderance of the evidence that the Telephone Co. exclusively controlled the booth and the condition which caused the injury. It was equally probable that the casualty was due to intervening forces not under the Telephone Co.'s control. It did not appear from the evidence that the Telephone Co. exclusively controlled the condition which worked the injury, and the surrounding circumstances, and that "the injury was one which, in accordance with the common knowledge of mankind and its experience in similar circumstances, would not ordinarily happen, unless because of some negligence on the part of the person having such control." *Frenkil v. Johnson, supra,* 605-606. Therefore, a proper and natural inference that the injury complained of was caused by the Telephone Co.'s negligence did not arise, and the doctrine of *res ipsa loquitur* did not apply.

The judgment is reversed because the trial court was wrong in permitting the jury to consider the Telephone Co.'s negligence on the basis of the inference thereof arising under the doctrine of *res ipsa loquitur,* and the motion for a directed verdict should have been granted.

*Judgment reversed; costs to be paid by appellee.*